BONNIE FAYE LOWERY v. WALTER M. NEWTON, JR., M.D. AND PINEHURST SURGICAL CLINIC, P.A.

No. 8016SC962

(Filed 2 June 1981)

1. Physicians, Surgeons, and Allied Professions § 15.1— medical malpractice—establishing standard of care—technical error in questions

An expert's testimony establishing the standard of care which would have been exercised by a prudent physician "under the same or similar circumstances" rather than "with similar training and experience" was harmless error. G.S. 90-21.12.

2. Physicians, Surgeons, and Allied Professions § 20— medical malpractice—proximate cause—burden of proof

In a malpractice action in which plaintiff contended that defendant plastic surgeon negligently injured nerves in her neck during surgery to remove a tumor and left her permanently paralyzed in her left arm and shoulder, plaintiff was not required to prove that she would never have developed the paralysis from a pre-existing disease which caused tumors to grow on the nerves, spinal cord and brain absent the negligent act of defendant.

3. Physicians, Surgeons, and Allied Professions § 15.2— action against plastic surgeon—standard of care—testimony by neurosurgeon

In a medical malpractice action against a plastic surgeon for negligence in the removal of a tumor from plaintiff's neck, a medical expert specializing in the field of neurological surgery was competent to testify regarding the standard of care in surgery on plaintiff since the overriding area of medical care involved in the case was surgery in general rather than plastic surgery or neurological surgery alone, and the expert had prior training and experience as a general surgeon and as a plastic surgeon.

4. **Physicians, Surgeons and Allied Professions § 15.1— expert testimony as to cause of injury**

   The trial court did not err in permitting plaintiff's counsel to ask an expert medical witness to state his opinion as to what actually caused plaintiff's injury rather than questioning the witness as to what could have caused the injury where the witness was stating his opinion on the basis of facts within his personal knowledge.

5. **Damages § 13.2; Physicians, Surgeons, and Allied Professions § 15— evidence of loss of earning capacity.**

   Even if evidence in a medical malpractice case of plaintiff's earnings from employment some six years before the operation in question was too remote as evidence of reduced earnings, it was admissible as evidence of loss of earning capacity.

6. **Physicians, Surgeons, and Allied Professions § 17— medical malpractice—instructions—degree of skill required**

   The trial court in a medical malpractice case did not err in instructing the jury that the liability of defendant plastic surgeon could be based upon a failure of defendant to possess a degree of professional learning, skill, and ability "as others similarly situated" rather than as others "with similar training and experience situated in the same or similar communities" in the language of G.S. 90-21.12, since the words "similarly situated" could easily encompass not only geographic location but also standing within a profession.

7. **Physicians, Surgeons, and Allied Professions § 21— medical malpractice—recovery for future damages**

   In a medical malpractice action based on negligence of defendant plastic surgeon in the removal of a tumor from plaintiff's neck, defendant's contention that the trial court erred in its charge by allowing a recovery for future damages because there was no evidence to support a reasonable apportionment of the future injuries between the effects of a pre-existing condition and the effects of the injuries from the surgery in question was without merit where the surgery resulted in total loss of the use of plaintiff's left arm and partial loss of use of her shoulder, and there was no evidence that the operation aggravated or increased the severity of plaintiff's pre-existing condition.

APPEAL by defendants from *McKinnon, Judge.* Judgment entered 9 May 1980 in Superior Court, ROBESON County. Heard in the Court of Appeals 8 April 1981.

This is a medical malpractice case. Plaintiff alleges that during an operation to remove a large tumor from her neck, defendant Newton negligently damaged nerves in her neck, leaving her permanently paralyzed in her left shoulder. Newton, a plastic surgeon, practiced in Pinehurst at the time the events complained of took place and was employed by defendant Pinehurst Surgical Clinic, P.A.

Plaintiff has suffered since childhood from Von Recklinghausen's disease, a disorder which causes tumors to grow on

the nerves, spinal cord and brain. When a tumor enlarges rapidly, it is often removed because of the danger of malignancy. Plaintiff has undergone surgical procedures for removal of tumors from various parts of her body since childhood.

In 1971, plaintiff was extremely weak. She was a quadraplegic. At that time, she underwent surgery performed by Dr. Keranen, a neurosurgeon, who continued as her physician. In 1972, Dr. Keranen noted that plaintiff's left side was weaker than the right. In 1974, Dr. Keranen referred plaintiff to the defendant, Dr. Newton, a plastic surgeon, to remove a tumor from her neck and her eyelid. Dr. Keranen observed the results of the surgery and found them to be satisfactory. Various other operations were performed and other medical services were rendered by Dr. Keranen thereafter. Dr. Keranen saw plaintiff on 4 March 1976, noticed a drooping of her left eyelid, and prescribed a strong pain reliever.

Near the end of March, 1976, plaintiff consulted Dr. Newton, complaining of pain and the growth of tumors in her neck, over her eye, and on her left arm. Dr. Newton recommended surgery. Plaintiff consented, and Dr. Newton operated on 28 April 1976, removing a tumor from her neck, alternately described as the size of a large orange, a small grapefruit, or a softball. On the following day, plaintiff discovered she could not move her arm or shoulder. Dr. Newton testified that so far as he knew he did not cut, touch, or come in contact with the brachial plexus, the nerve trunk controlling movement of the shoulder and arm.

Over objection, Dr. Keranen testified that the tumor should not have been removed, since it had not changed size at the time of his consultation in March. He further testified that only a neurosurgeon, and not a plastic surgeon, should have performed the surgery. Dr. Keranen stated that in his opinion the surgery performed on plaintiff's neck by Dr. Newton in April, 1976, during which the tumor was removed, constituted a failure to exercise that degree of care which a reasonable and prudent physician would have exercised under the same or similar circumstances in the same or similar community. He further testified that the paralysis in the left arm and shoulder was the result of an injury to the brachial plexus that occurred in the course of surgery, and that the condition of the arm and shoulder was permanent.

Dr. Newton testified that plaintiff gave him a history of rapid change in the tumor and reported that the tumor was painful. Dr.

Newton further testified that he noted plaintiff's difficulty in moving her arm and shoulder the day following the operation. Thereafter, he made an appointment for plaintiff to see an orthopaedic surgeon, but plaintiff did not keep the appointment.

The jury returned a verdict favoring plaintiff in the sum of $100,000. Defendants appeal from entry of judgment and denial of their motion for judgment n.o.v. and alternately for a new trial.

*McLeod & Senter, by Joe McLeod and William L. Senter, for plaintiff appellee.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by James D. Blount, Jr. and Nigle B. Barrow, Jr., for defendant appellants.*

HILL, Judge.

Defendants contend in their first assignment of error that the trial court erred in denying their motion for judgment notwithstanding the verdict.

Plaintiff's complaint alleged negligence arising out of the performance of professional medical services. In order to withstand defendants' motion for a directed verdict, plaintiff must offer evidence which establishes the following elements: (1) the standard of care; (2) breach of the standard of care; (3) proximate causation; and (4) damages. Failure to establish sufficient evidence on any one element entitles the defendant to a directed verdict. *See* Prosser, Law of Torts, § 30. *Also see* G.S. 90-21.12.

[1] Defendants contend that the standard of care in medical malpractice actions is established in part by G.S. 90-21.12 and requires the introduction of expert medical testimony. This statute became law in 1975 and provides as follows:

> § 90-21.12. *Standard of health care.* — In any action for damages for personal injury or death arising out of the furnishing or the failure to furnish professional services in the performance of medical, dental, or other health care, the defendant shall not be liable for the payment of damages unless the trier of the facts is satisfied by the greater weight of the evidence that the care of such health care provider was not in accordance with the standards of practice among

members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.

Admittedly, the phrasing of the questions to Dr. Keranen to establish the standard of care did not follow the statute verbatim. Dr. Keranen testified that the removal of the tumor under the circumstances was a failure on the part of Dr. Newton to exercise that degree of care, professional skill, and judgment which a reasonable and prudent physician would have exercised under the same or similar circumstances, in the same or similar community. To contend that the substitution of "under the same or similar circumstances" in lieu of "with similar training and experience" is significant, places form over substance. Such technical error is harmless. However, the breach of the standard of care is clearly established by Dr. Keranen's testimony that the best treatment for the tumor was to leave it alone and that if such surgery was required, it should have been done by a neurosurgeon.

[2] Defendants argue in their next assignment of error that plaintiff has failed to establish defendant Newton's negligence as a proximate cause of plaintiff's injuries. Defendants contend that not only is it incumbent upon plaintiff to show that she currently suffers from a condition caused in part by the alleged negligent act of defendant Newton but also to offer evidence that she would never have developed her present condition as a result of the pre-existing condition's having run its natural course of development, absent the intervention of the negligent act of the defendant. We do not agree. An injured person is entitled to recover all damages caused by defendant's negligence. When plaintiff's pre-existing physical or mental condition is aggravated or activated by a subsequent act, defendant Newton is liable to the extent that his wrongful act proximately and naturally aggravated or activated plaintiff's pre-existing condition. *See Potts v. Howser*, 274 N.C. 49, 161 S.E. 2d 737 (1968).

Defendants point out that plaintiff at one time had been a quadraplegic, had eight operations on her neck as a result of the disease process, and that her left side was weaker than her right side. Defendants overlook the real damage plaintiff suffered as a result of the operation — paralysis of her arm and shoulder. We

find nowhere in the record any evidence that prior existing conditions, running a normal course, would have resulted in injuries which plaintiff sustained as a result of damage done by defendant Newton in surgery. Plaintiff has no obligation to negate a remote possibility of loss of use of her arm and shoulder. The cases cited by defendants are all distinguishable. This assignment of error is overruled.

Next, defendants bring forth seventeen assignments of error based upon thirty-eight duly preserved exceptions to the introduction of various portions of the testimony, contending this Court should reverse the judgment of the trial court and remand the case for a new trial. We have considered all of the assignments and discuss below a representative few.

ERRORS IN THE INTRODUCTION OF EXPERT TESTIMONY

[3] Defendants argue that Dr. Keranen was not competent to testify regarding the standard of care established in the defendant Newton's field of practice. Dr. Keranen was tendered as a medical expert, specializing in the field of neurological surgery.

In malpractice cases the applicable standard of care must be established by other practitioners in the particular field of practice or by other expert witnesses equally familiar and competent to testify to that limited field of practice. *Whitehurst v. Boehm*, 41 N.C. App. 670, 677, 255 S.E. 2d 761 (1979). Defendants contend Dr. Keranen could not testify as an expert, but rather that a plastic surgeon should have been used to establish the standard of care in the instant case. We disagree.

There is some overlapping in the various areas of health care. Dr. Keranen testified that he was graduated from Duke Medical School and did a year of surgical internship at Duke Hospital. Thereafter, he did a rotating internship at Duke University where he performed general surgery *and plastic surgery* among other things. Dr. Keranen testified that he rotated from one type of surgery to another. Thereafter, he went to a neurological residency at the University of Vermont. He was tendered as a medical expert, specializing in the field of neurological surgery.

The overriding area of medical care before us is surgery — not plastic surgery alone or neurological surgery alone.

The operation involved some expertise by the surgeon in both areas. The prior experience and training of Dr. Keranen as a general surgeon *and plastic surgeon* is sufficient to qualify him to testify as an expert for the purpose of establishing the standard of care and breach thereof required in the case before us. This assignment of error is overruled.

Next, defendants contend the trial court erred in allowing Dr. Keranen to testify as to his opinion of the failure of Dr. Newton to meet the standard of care, the cause of injury, and his opinion as to the injury's permanence without first revealing the factual basis for his opinion. It is well settled that an expert may not state his opinion based upon facts not within his personal knowledge without first requiring the examiner properly to propound a hypothetical question. *Todd v. Watts,* 269 N.C. 417, 152 S.E. 2d 448 (1967). Succinctly stated, the rule is that the expert must base his opinion upon facts within his own knowledge, or upon a hypothesis of the finding by the jury of certain facts recited in the question. *Summerlin v. R.R.,* 133 N.C. 550, 554, 45 S.E. 898 (1903).

We note from the record that Dr. Keranen had been plaintiff's attending physician on a regular basis since 1971 and had seen her during the month immediately preceding the operation by defendant Newton. Dr. Keranen also saw plaintiff during the week after the operation. It is apparent that Dr. Keranen was testifying from his personal knowledge of the physical condition of his patient. Admittedly, some of the questions could have been more aptly stated, but deviation from the norm was harmless error.

[4] At trial, plaintiff's counsel asked Dr. Keranen if he had an opinion as to the cause of the paralysis which he found in plaintiff's left shoulder and arm when he examined her on 10 May 1976. This question was material in order to establish proximate cause. The defendants contend the trial judge erred in allowing plaintiff's counsel to ask Dr. Keranen what actually caused the injury, rather than questioning the witness as to what could have caused the injury. We find no error. When an expert witness testifies as to facts based upon his personal knowledge, he may testify as to his opinion.

"[I]f the expert has a *positive* opinion on the subject, he should be able to express it without the 'could' or 'might'

formula." *Taylor v. Boger*, 289 N.C. 560, 565, 223 S.E. 2d 350 (1976), *citing Mann v. Transportation Co.* and *Tillett v. Transportation Co.*, 283 N.C. 734, 198 S.E. 2d 558 (1973).

Defendants next point to several exceptions where the trial court allowed Dr. Keranen to express his opinion on certain matters which the defendants contend were irrelevant and misleading to the jury. Defendants further contend the trial court erred in refusing to strike part of Dr. Keranen's testimony when subsequent testimony revealed the first testimony inadmissible. Defendants also contend the court erred in allowing Dr. Keranen to express his opinion as to failure to meet the degree of care which a reasonable and prudent physician would have exercised and his opinion as to the permanency of plaintiff's condition. We have examined these assignments of error and find them to be without merit.

### VARIOUS ERRORS IN THE INTRODUCTION OF EVIDENCE

Defendants argue the court permitted plaintiff's counsel to lead witnesses. It is elementary that leading questions are not allowed on direct examination as a general rule. However, the general conduct of a trial is within the trial judge's discretion. The form of the questions was harmless.

[5] The trial court permitted plaintiff to testify regarding her earnings from employment in 1969 and 1970 and prior to the initial onset of her paralysis. Plaintiff testified that she earned the minimum wage at that time. This was the only evidence that plaintiff ever had any earnings. Defendants contend such evidence was too remote and prejudicial. *See Fox v. Army Store*, 216 N.C. 468, 470, 5 S.E. 2d 436 (1939). There is a distinction between loss of specific wages from a particular job or specific lost profits, and impaired capacity to earn wages in general. *See Johnson v. Lewis*, 251 N.C. 797, 112 S.E. 2d 512 (1960). Therefore, even assuming the evidence of employment of plaintiff some six years before the operation herein was too remote as evidence of reduced earnings, nevertheless, it is admissible as evidence of loss of earning capacity. Plaintiff further testified as to her interest in decoupage as prospective employment. Plaintiff's testimony was proper and admissible.

Upon cross-examination of the plaintiff, the following testimony was elicited:

Q. But until the time he [Keranen] operated on your arm in August of 1976, he never told you that your arm was permanently disabled, did he?

A. He told me Dr. Newton didn't have any business doing it.

Counsel for defendants moved to strike the answer as totally unresponsive, and the motion was denied. The defendants contend the testimony was hearsay and unresponsive. Assuming such testimony was hearsay and unresponsive, it is harmless in view of the fact that the record discloses that similar testimony occurs elsewhere. Defendants lost no substantial right, and no grounds exist for granting a new trial. G.S. 1A-1, Rule 61.

Defendants raise several other questions under the heading set out in this subsection. We have examined them and find them to be without merit.

Defendants argue the trial court erred in stating the evidence and instructing the jury on the issues of liability and damages. Defendants contend in the first section of their brief that there is no competent evidence of the standard of care, any breach of the standard of care, or that any alleged breach was a proximate cause of the alleged injuries. We have heretofore examined these assignments of error and found them to be without merit.

[6] Defendants further argue that the trial court erred in its instructions to the jury that the liability of the defendants could be based upon a failure of the defendants to "possess a degree of professional learning, skill, and ability as others similarly situated . . .." Defendants refer again to the language in G.S. 90-21.12, which phrases the tests as ". . . with similar training and experience situated in the same or similar communities . . .." Defendants argue that since the enactment of this statute in 1975 only a literal interpretation of the wording will suffice. We do not agree. It is the concept expressed by the words of the statute which controls. The words "similarly situated" can easily encompass not only geographic location, but also standing within a profession. No quarrel is present as to any limitations imposed by the geographic location.

The jury had before it evidence of the qualifications — educational and otherwise — of Dr. Newton. The trial judge in his

charge said "remembering that for you to find negligence it must be shown either that the defendant did not possess a degree of professional learning, skill and ability as others *similarly situated,* or that he did not possess or that he did not exercise reasonable care and diligence in the application of his knowledge and skills in the plaintiff's case, or that he did not use his best judgment in the treatment and care of his patient." The charge of the judge was adequate to instruct the jury as to its duty in the case. To conclude otherwise would again place form over substance.

Defendants argue the trial judge erred in his charge by referring to the "field" of surgery of the defendants, when the same was not relevant. The qualifications of both Dr. Keranen and Dr. Newton, including the care offered plaintiff, had been admitted previously. Likewise, throughout the record reference is made to "neurologist" and "plastic surgeon" without objection. Nothing said by the trial judge by referring to the "fields" of practice could have misled the jury.

[7] Defendants further argue that the trial court erred in its charge by allowing a recovery for future damages because there was no evidence to support a reasonable apportionment of the future injuries between the effects of the pre-existing condition and the effects of the surgical injury. Defendants contend the ruling in *Potts v. Howser,* 274 N.C. 49, 54, 161 S.E. 2d 737 (1968), is controlling:

'[W]here the wrongful act does not cause a diseased condition but only aggravates and increases the severity of a condition existing at the time of the injury, the injured person may recover only for such increased or augmented sufferings as are the natural and proximate result of the wrongful act, or, as otherwise stated, where a pre-existing disease is aggravated by the wrongful act of another person, the victim's recovery in damages is limited to the additional injury caused by the aggravation over and above the consequences, which the pre-existing disease, running its normal course, would itself have caused if there had been no aggravation by the wrongful injury.'

The case before this Court is distinguishable. Here, the surgery resulted in total loss of use of the arm and partial loss of

use of the shoulder. There is no evidence before the court that the operation aggravated or increased the severity of the pre-existing condition.

Defendants have gleaned the record and brought forth 24 assignments of error. We have examined all of them. Some we have overruled. Some have constituted error; but where error exists, we have determined it to be harmless. In like manner, we have examined the cross-assignments of error brought forward by the plaintiff and find no error exists in the ruling by the trial judge on plaintiff's question. The parties are not entitled to a perfect trial—only a fair trial. Defendants received that.

No Error.

Judge MARTIN (Harry C.) concurs.

Chief Judge MORRIS concurs in the result.