BOBBIE L. MORRISON v. DR. W. K. STALLWORTH

No. 8426SC640

(Filed 5 March 1985)

**1. Physicians, Surgeons and Allied Professions § 20.2 — medical malpractice — instruction on guarantee**

The trial court in a medical malpractice case erred in instructing the jury that a doctor in obstetrics and gynecology does not ordinarily guarantee or insure the success of his breast examination and diagnosis where no issue concerning a guarantee was raised.

**2. Physicians, Surgeons and Allied Professions § 20.2; Trial § 36.1 — medical malpractice — instructions — expression of opinion on credibility of witness**

The trial judge in a medical malpractice case improperly expressed an opinion on the credibility of a plastic surgeon who testified as an expert for plaintiff concerning defendant's evaluation of plaintiff for breast cancer relative to the applicable standard of care when he summarized the testimony of all other experts at length but mentioned only that the plastic surgeon had "explained biopsy," and when he instructed the jury during the plastic surgeon's testimony to keep in mind that defendant was an obstetrician and gynecologist and that defendant and the witness did not possess expertise in the same field.

**3. Physicians, Surgeons and Allied Professions § 20.2 — medical malpractice — instruction negating plaintiff's evidence**

The trial court's instruction in a medical malpractice case that plaintiff had to show that defendant "failed to feel or otherwise palpate a breast mass" and failed to conduct further investigation improperly negated plaintiff's expert testimony presented on the theory that aggressive examination and mammography was required under the applicable standard of care regardless of whether a mass was felt or was otherwise actually present.

**4. Physicians, Surgeons and Allied Professions § 20.2 — medical malpractice — failure to diagnose — issue in terms of "injury"**

In a medical malpractice case based on alleged negligence by defendant in failing to diagnose plaintiff's breast cancer so that it grew to a more advanced stage, the trial court's framing of the single negligence issue in terms of plaintiff's "injury" rather than in language proposed by plaintiff concerning whether plaintiff was "damaged or injured" could have misled the jury into thinking that their decision was whether defendant's alleged negligence caused the cancer, not whether the delay in diagnosis caused avoidable additional damage from an otherwise unavoidable disease.

**5. Physicians, Surgeons and Allied Professions § 20.2 — medical malpractice — instruction on degree of skill**

The trial court did not err in instructing that a medical malpractice defendant was not held to a standard of "absolute accuracy" or "utmost degree of skill."

**6. Evidence § 29.2— medical pamphlet—use in examining witnesses—refusal to permit use by jury—instruction required**

The trial court properly denied the jury's request to use a medical pamphlet which plaintiff had employed in her examination of expert witnesses where the pamphlet was not introduced into evidence and portions of it were not read into evidence, G.S. 8-40.1, but the trial court should have instructed that expert testimony elicited in response to questions referring to the pamphlet was evidence to be considered by the jury.

**7. Evidence § 29.2— movie as authoritative text—failure to meet burden of proof**

The plaintiff in a medical malpractice case failed to meet her burden of justifying admission of a film on the early detection of cancer as a "reliable and authoritative text" under G.S. 8-40.1 where plaintiff did not explain to the court how the film would be presented and how her experts would help the jury to understand it, and plaintiff did not explain how defendant's experts would have a chance, as they would with printed text, to explain or rebut her experts' testimony. G.S. 8C-1, Rule 803(18).

**8. Physicians, Surgeons and Allied Professions § 21— medical malpractice—failure to diagnose—shortened life expectancy as element of damages**

Shortened life expectancy was a compensable element of damages in a medical malpractice case based on alleged negligence by defendant in failing to diagnose plaintiff's breast cancer so that it grew to a more advanced stage, and the trial court erred in excluding evidence relevant thereto and in refusing to instruct on such element of damages.

**9. Physicians, Surgeons and Allied Professions §§ 15.2, 21— medical malpractice —recovery for disfigurement—competency of plastic surgeon to testify**

In a medical malpractice case based on negligence by defendant in failing to diagnose plaintiff's breast cancer, plaintiff could recover damages for disfigurement allegedly caused when the cancer spread into plaintiff's chest and the degenerative effects of required radiation therapy hindered efforts at reconstructive surgery after a radical mastectomy was performed, but plaintiff could not recover for both disfigurement and reconstructive surgery. Furthermore, a plastic surgeon was competent to relate defendant's alleged negligence resulting in radiation therapy to the extent of plaintiff's disfigurement.

APPEAL by plaintiff from *Burroughs, Judge.* Judgment entered 7 December 1983 in MECKLENBURG County Superior Court. Heard in the Court of Appeals 8 February 1985.

Plaintiff, Bobbie Morrison, appealed from a jury verdict finding no liability in this medical malpractice action. Defendant Dr. W. K. Stallworth had served plaintiff for a number of years as her obstetrician/gynecologist when, in March 1977, she came to him with a breast complaint. Plaintiff was 45 years old at the time. According to plaintiff, defendant examined her and told her that the lump she claimed she felt was just a swollen milk gland,

and not to worry; defendant's records showed a negative examination. Plaintiff saw defendant for a follow-up six weeks later with the same result. Plaintiff underwent a hysterectomy two weeks later, with defendant performing the operation. She consulted him post-operatively through the summer, but apparently did not tell him about her continued pain in her breast. Finally, in October 1977, plaintiff consulted another doctor who found a suspicious lesion in the breast. Biopsy indicated that the lesion was cancerous and a radical mastectomy was performed. Since the cancer had spread to lymph nodes in adjacent areas of plaintiff's chest, she received a course of cobalt radiation therapy. She then had several reconstructive operations. Since the mastectomy and radiation, no new tumors have developed.

The theory of the complaint, advanced by plaintiff at trial, was not that defendant had caused the cancer, but that he failed to adequately respond to and diagnose plaintiff's condition. His assurance that it was "just a swollen milk gland" delayed the eventual detection and treatment of the cancer. This allowed the cancer to metastasize, or spread, more than it otherwise would have, and thus caused plaintiff to undergo radical surgical procedures and radiation therapy which shortened her life expectancy. Defendant countered with evidence showing that full examinations were conducted with no results, and that plaintiff never described any symptomatology to him which would suggest more aggressive treatment. In addition, defendant presented evidence that a radical mastectomy would have been the indicated treatment in 1977 in any event.

The controversy between experts at trial centered on the use of mammograms, or breast x-rays, for the early detection of cancer: plaintiff's experts contended that standard medical practice required mammography for patients in plaintiff's age group who complained of soreness and lumps, even if no lump could be found. Defendant's expert evidence showed that in 1977 mammography was not indicated unless some lump or other suspicious circumstance could be found. The expert testimony also conflicted on the necessary aggressiveness of diagnostic and follow-up procedures and the likely rate of spread of the cancer.

The jury considered one negligence issue: "Was Mrs. Morrison's injury proximately caused by the negligence of the De-

fendant Dr. W. K. Stallworth?" They answered "No," and therefore did not reach the separate damages issue. From judgment entered accordingly, taxing the costs (including expert witness fees) to her, plaintiff appealed.

*McCain and Essen, by Grover C. McCain, Jr. and Jeff Erick Essen, for plaintiff.*

*Golding, Crews, Meekins, Gordon & Gray, by John G. Golding and James P. Crews, for defendant.*

WELLS, Judge.

Plaintiff raises numerous assignments of error, attacking in particular the instructions to the jury. Plaintiff contends that *Wall v. Stout*, 310 N.C. 184, 311 S.E. 2d 571 (1984), requires reversal in this case. There the supreme court held that the jury instructions, in their totality, were "so emphatically favorable" to the physician-defendant as to require a new trial. While the instructions given in the present case do not reach quite the same level of favor, in conjunction with other errors we conclude that they sufficiently prejudiced plaintiff to require a new trial.

[1] The court here twice instructed the jury to the effect that "[a] medical doctor in obstetrics and gynecology does not ordinarily [guarantee or] insure the success of his breast examination and diagnosis." This instruction was explicitly disapproved in *Wall* except for those cases where an issue concerning a guarantee has been raised. And, as in *Wall*, the error in giving an irrelevant exculpatory instruction was compounded by repetition. Defendant contends that plaintiff's theory of the case, that defendant assured her the lump was nothing to worry about, did involve such a guarantee. Such logic would apply in virtually every malpractice case, however, and render the holding in *Wall* meaningless. We hold that under *Wall* the instruction should be given only when some explicit guarantee is involved.

Just as in *Wall*, the court below also instructed the jury three times that the law does not presume negligence from the mere fact of injury. As noted there, the pattern instructions only call for this instruction once, and its needless repetition unduly tended to emphasize a principle of law exculpatory to defendant in this case.

[2]   Plaintiff also contends that the trial court erred in summarizing the evidence, by devoting too much attention to defendant's case and emphasizing and omitting various particulars. It is clear that there is no requirement that summations of the evidence be equal in length. *Love v. Pressley*, 34 N.C. App. 503, 239 S.E. 2d 574 (1977), *disc. rev. denied*, 294 N.C. 441, 241 S.E. 2d 843 (1978). Yet in summarizing the evidence, the court must take care not to express or imply an opinion. *Belk v. Schweizer*, 268 N.C. 50, 149 S.E. 2d 565 (1966). Plaintiff presented two experts, Drs. Day and Barwick. Dr. Barwick testified that he had general training in surgery, including evaluation of breast disease, and that in connection with his plastic surgery practice he evaluated substantial numbers of women for breast disease. He then proceeded to give his opinion on the critical issue, concerning defendant's evaluation of plaintiff relative to the applicable standard of care. On this record, Dr. Barwick clearly qualified to give such expert testimony. *Lowery v. Newton*, 52 N.C. App. 234, 278 S.E. 2d 566, *disc. rev. denied*, 303 N.C. 711, *reconsideration denied*, 304 N.C. 195, 291 S.E. 2d 148 (1981). Although the court summarized the testimony of all the other experts at length, the sole mention given Dr. Barwick was that he "explained biopsy." In connection with the court's remarks during Dr. Barwick's testimony discussed below, this tended to indicate to the jury that the court either found Dr. Barwick's testimony not competent on the issue or found it lacking in credibility or significance.

Plaintiff presented Dr. Day as the first of her two expert witnesses. He testified on his experience with developing programs for early detection of breast and other cancer. He continued by stating that the techniques for detecting breast cancer are easily taught and that any licensed physician should be able to perform a standard competent examination. Dr. Barwick later testified about his training and practice. After Dr. Barwick's further testimony about plastic surgery, the following ensued:

Q. Dr. Barwick, were you familiar with the standards of evaluating women who had breast lumps in 1977 in communities similar to Charlotte, North Carolina?

MR. GOLDING: Objection.

THE COURT: Overruled. Members of the jury, this witness is going to be asked a series of questions. You must remember

he is speaking from the field of plastic surgery and general surgery. You must keep in mind that Dr. Stallworth is an obstetric [sic] and gynecologist. You must keep in mind that these two men do not possess expertise in the same fields. This witness will be testifying in the area of plastic and general surgery. Go ahead and ask him the question.

The court cautioned the jury twice more to remember these instructions, before allowing Dr. Barwick to answer follow-up questions. At the next break, plaintiff requested the court to withdraw the instruction and the court agreed the instruction was error. However, the court simply gave a general weight and credibility instruction. The *sua sponte* instructions clearly and erroneously tended to undermine Dr. Barwick's testimony on the key issue. This court has expressly rejected the notion that a doctor's actions may be evaluated only by members of his own medical specialty. *Lowery v. Newton, supra.* If anything, Dr. Barwick was competent to testify to the minimum standard of care, *Id.,* and defendant, holding himself out as a specialist, would be held to a higher standard. *Koury v. Follo*, 272 N.C. 366, 158 S.E. 2d 548 (1968). Although the court did not unequivocally undermine Dr. Barwick's testimony, *see In re Will of Holcomb*, 244 N.C. 391, 93 S.E. 2d 454 (1956), its *sua sponte* instructions and omission of Dr. Barwick's testimony from its evidentiary summary clearly prejudiced plaintiff. This is particularly true in light of the critical role of expert testimony in malpractice cases.

[3] Plaintiff also contends that the court further erred in giving the four-part burden of proof charge disapproved in *Wall.* While the burden of proof instruction was essentially in the form disapproved, the specific error in *Wall* did not occur. Rather, the court deleted the redundant first element, substituting instead an instruction that plaintiff had to show that defendant "failed to feel or otherwise palpate a breast mass" and failed to conduct further investigation. Unfortunately, this instruction tended to negate much of plaintiff's expert testimony, which was presented in large part on the theory that aggressive examination and mammography was required under the applicable standard of care regardless of whether a mass was felt or otherwise actually present.

[4] Finally, the court framed the single negligence issue simply in terms of "Mrs. Morrison's injury." Plaintiff contends that this

phrasing, as opposed to her proposed phrasing "damaged or injured," tended to mislead the jury into thinking their decision was as to whether or not the alleged negligence caused the cancer, not as to whether or not the delay in diagnosis caused *avoidable* additional damage from an otherwise *unavoidable* disease. We agree, particularly in light of the fact that the court repeatedly used the word injury in its instructions without ever defining what exactly plaintiff's contended injury was. In the context of this case, this clearly tended to mislead. We are aware that the form and phraseology of the issues lie in the discretion of the court. *First Nat'l Bank of Catawba Co. v. Burwell*, 65 N.C. App. 590, 310 S.E. 2d 47 (1983). The issues should nevertheless embrace the real matters in dispute. *Greene v. Greene*, 217 N.C. 649, 9 S.E. 2d 413 (1940). Considered in light of the charge and the trial as a whole, the negligence issue clearly was lacking in clarity.

Like the court in *Wall*, we conclude that the individual errors discussed above do not individually require a new trial, but taken together do constitute sufficient prejudice to require a new trial.

[5]  Because the questions may arise again on remand, we also address plaintiff's remaining assignments of error. Plaintiff objects to an instruction that defendant was not held to a standard of "absolute accuracy" or "utmost degree of skill." This instruction was expressly approved in *Wall* as a correct statement of the law. It was not unduly repeated here. We discern no error.

Plaintiff also assigns error to the denial of her request to submit several special procedural instructions. The court was required to instruct only on the substantial issues in the action. *Link v. Link*, 278 N.C. 181, 179 S.E. 2d 697 (1971). Plaintiff's proposed instructions, while they may have been procedurally helpful to the jury in its deliberations, did not add any substantive matter or essential legal principles, and therefore no prejudicial error occurred. *Tan v. Tan*, 49 N.C. App. 516, 272 S.E. 2d 11 (1980), *disc. rev. denied*, 302 N.C. 402, 279 S.E. 2d 356 (1981).

[6]  At one point during its deliberations, the jury returned and asked to "use" a medical pamphlet plaintiff had employed in her examination and particularly to review the information on symptoms of breast cancer. The court denied their request, stating that the book was not introduced into evidence and therefore the jury could not look at it. Under N.C. Gen. Stat. § 8-40.1 (1981),

such materials are admissible as exhibits only if agreed to by counsel. Defense counsel expressly refused to agree to introduction as an exhibit. The statute also allows portions of such materials to be read into evidence, but no such reading took place. Only the titles of two tables, and not the tables themselves, were specifically mentioned. Instead, the pamphlet was referred to only generally. The pamphlet was thus never introduced into evidence by either means contemplated by the statute, and the court's instruction was technically correct. The jury could have been misled to infer, however, that they should not consider testimony based on the pamphlet. For purposes of clarity, should the issue arise on retrial, we thus believe the jury should receive additional instruction that expert testimony elicited in response to questions referring to the pamphlet is evidence to be considered by them.

[7] Plaintiff sought unsuccessfully to show the jury an American Cancer Society film, on the early detection of cancer, under the same statute. Plaintiff attempted to show it to the jury as a "reliable and authoritative text." Accepting this argument as applicable, it is not clear to us whether showing the film would constitute use as an exhibit or "reading" as that term is used in the statute. Plaintiff did not explain to the court how the film would be presented and how her experts would help the jury understand it. *See* N.C. Gen. Stat. § 8C-1, Rule of Evidence 803(18), Commentary (Cum. Supp. 1983) (necessity of expert assistance to avoid misinformation under similar rule). Nor did she explain how defendant's experts would have a chance, as they would with printed texts, to explain or rebut her experts' testimony. We believe that plaintiff failed to meet her burden of justifying admission. She never moved to introduce the film as substantive or illustrative evidence, *see* N.C. Gen. Stat. § 8-97 (1981), nor has she shown what if any relevant information was thus kept from the jury. *See Josey v. Josey*, 272 N.C. 138, 157 S.E. 2d 674 (1967) (necessity of inclusion in record on appeal); *see also Tart v. McGann*, 697 F. 2d 75 (2d Cir. 1982).

[8] We now come to assignments of error regarding damages. Plaintiff requested instructions on damages for shortened life expectancy and for the mental suffering associated therewith, which the court refused to give. The instructions were premised on evidence, excluded in large part, that related the various medically-

defined stages of breast cancer to statistical survival rates, broken down by the stage at which the cancer was detected. Plaintiff's theory was that defendant's negligence in failing to diagnose plaintiff's cancer allowed it to grow from the beginning stage to a more advanced stage, at which statistically more women reported spread of the cancer into areas of the chest adjacent to the breast. Thus, according to plaintiff's evidence, her chances of surviving ten years decreased from 75% to 34% and of surviving 20 years from 62% to 24%. This decrease in life expectancy also caused economic and mental damage.

We find little North Carolina law directly on point. Traditionally, American courts have refused to allow recovery of damages in personal injury cases on the basis of shortened life expectancy *per se. See Downie v. United States Lines Co.*, 359 F. 2d 344 (3d Cir.) (contrasting "American" and "English" rules), *cert. denied*, 385 U.S. 897 (1966); 22 Am. Jur. 2d *Damages* § 121 (1965). Generally, courts have considered such damages improper because of the extreme difficulty of developing a satisfactory rule for measuring them. *Id.* At the same time, however, American courts have allowed claims for the loss of such associated elements of damages as loss of wages or ability to engage in avocations, *Downie v. United States Lines Co., supra*, loss of "life's pleasures," *Tyminski v. United States*, 481 F. 2d 257 (3d Cir. 1973), and the mental anguish associated with the knowledge of loss. *Downie v. United States Lines Co., supra*. This American rule has not been with judicial criticism. *See Downie v. United States Lines Co., supra* (Kalodner, C.J., dissenting); *DePass v. United States*, 721 F. 2d 203 (7th Cir. 1983) (Posner, J., dissenting).

The North Carolina cases have stated the broad general rule that in personal injury cases "the plaintiff is entitled to recover the present worth of all damages naturally and proximately resulting from defendant's tort." *King v. Britt*, 267 N.C. 594, 148 S.E. 2d 594 (1966). The court went on in *King* to list damages which might be recovered, cautioning however that they did not state the entire rule. *King* suggests that *any* damages shown by substantial evidence, or properly inferable therefrom, may be submitted to the jury. *See* R. Byrd, *Recovery for Mental Anguish in North Carolina*, 58 N.C. L. Rev. 435 (1980) (liberal allowance of damages). The general rule is simply that these damages must be

shown to be probable, not merely possible, consequences of the injury. *Fisher v. Rogers*, 251 N.C. 610, 112 S.E. 2d 76 (1960). We conclude that shortened life expectancy is a compensable element of damage. The trial court therefore erred in excluding evidence relevant thereto and in refusing to instruct on this element of damages, as plaintiff requested.

Our result is reinforced by a recent and similar Massachusetts case. *Glicklich v. Spievack*, 16 Mass. App. 488, 452 N.E. 2d 287, *rev. denied*, 390 Mass. 1103, 454 N.E. 2d 1276 (1983). There the jury awarded damages for shortened life expectancy based on negligent diagnosis which caused a delay of six months in detection of breast cancer. Because of the delay, the prognosis for recovery worsened as the cancer developed; the plaintiff's evidence showed that her ten year survival expectancy was reduced from 94% to 50%. The court upheld the damage award. *See also Slater v. Baker*, 301 N.W. 2d 315 (Minn. 1981) (appeal on evidentiary ruling, but noting sufficient medical evidence to prove shortened life expectancy in breast cancer case).

[9] Plaintiff's other contested theory of damages proceeded from her evidence that the delay in diagnosis probably caused the cancer to spread into her chest, avoidably requiring radiation therapy. The degenerative effects of the radiation on the skin and tissue thus substantially hindered efforts at reconstructive surgery, causing disfigurement over and above that plaintiff would have suffered otherwise. North Carolina recognizes disfigurement as a proper element of damages in a personal injury case. *See Goble v. Helms*, 64 N.C. App. 439, 307 S.E. 2d 807 (1983), *disc. rev. denied*, 310 N.C. 625, 315 S.E. 2d 690 (1984). Although we find no North Carolina authority, the modern rule appears to allow medical expenses for plastic surgery resulting from negligently inflicted injury. Annot., 88 A.L.R. 3d 117 (1978). Courts have universally held, however, that there can be no double recovery: a plaintiff cannot recover both for disfigurement and reconstruction. *Id.* Plaintiff's evidence suggested one general disfigurement, and her plastic surgery evidence was related to the extent (including correctability) thereof, not to any aggravation of a pre-existing condition. As noted above, the error, if any, in instructing the jury lay in not defining for them the nature of the "injury" they had to find to award damages.

Dr. Barwick was clearly competent to testify on the disfigurement issue. His testimony clearly related the alleged negligence (resulting in radiation therapy) to the extent of plaintiff's disfigurement. Therefore it was error for the trial court to exclude his testimony on this subject.

Plaintiff also contends that the course of the trial, as evidenced by the cumulation of rulings and instructions, reflected prejudicial bias on the part of the trial judge. Plaintiff bears a heavy burden in advancing such a contention, and our review of the record does not support it. *See Spencer v. Spencer,* 70 N.C. App. 159, 319 S.E. 2d 636 (1984). Our disposition of the case makes this argument irrelevant in any event.

For the reasons stated, there must be a

New trial.

Judges WHICHARD and BECTON concur.