VICKIE B. LANGWELL, ADMINISTRATOR OF THE ESTATE OF JEFFREY A. LANGWELL, DECEASED, PLAINTIFF v. ALBEMARLE FAMILY PRACTICE, PLLC; AND TAMELY TYSON, FNP, DEFENDANTS

No. COA09-891

(Filed 4 May 2010)

**Medical Malpractice— motion for a new trial—improperly granted**

The trial court abused its discretion in granting plaintiff's motion for a new trial in a medical malpractice action. The trial court's order contained 11 findings of fact pertaining to the evidence presented at trial, only one of which referred to defendants' evidence and which omitted any reference to defendants' expert witness who testified as to the applicable standard of care. Moreover, the trial court did not identify any "unreliable testimony" submitted by defendants.

Appeal by Defendants from order entered 8 December 2008 by Judge Milton F. Fitch, Jr. in Camden County Superior Court. Heard in the Court of Appeals 28 January 2010.

*C. Everett Thompson, II and Baker, Jones, Daly & Carter, P.A., by Roswald B. Daly, Jr., for Plaintiff-Appellee.*

*Walker, Allen, Grice, Ammons & Foy, L.L.P., by Jerry A. Allen, Jr. and O. Drew Grice, Jr., for Defendants-Appellants.*

STEPHENS, Judge.

*I. Procedural History and Factual Background*

On Monday, 19 May 2003 at around 9:00 a.m., Jeffrey Langwell presented to Albemarle Family Practice ("Albemarle") as an acute walk-in patient. Mr. Langwell was seen by Tamely Tyson, a family nurse practitioner employed by Albemarle. At that time, Mr. Langwell reported to Nurse Tyson that "earlier in the week he just didn't feel very good, but just kind of blew it off." Then on Friday, he became short of breath and started coughing. He also got dizzy and vomited some. Although he was not dizzy or vomiting on the day he went to Albemarle, he continued to cough. He coughed up some yellowish phlegm, some of which was blood-tinged. He also reported that he had been running a low-grade fever and was having chills.

Mr. Langwell denied any chest pain or palpitations, and although he was experiencing mild shortness of breath, he was not having any shortness of breath that was causing respiratory complications. He denied any ear or throat pain. Mr. Langwell had a medical history of diabetes, hypertension, and elevated cholesterol. He also had a history of smoking.

Nurse Tyson performed a physical examination of Mr. Langwell. During the course of the examination, Nurse Tyson determined that Mr. Langwell's blood pressure was low, his heart rate was elevated, although his heart rhythm was regular, and he was perspiring. However, his respiratory rate was within normal limits, his skin was warm, his color was good, and his mental status was normal. When Nurse Tyson listened to Mr. Langwell's lungs, she discovered bilateral rhonchi, which alerted her to the presence of respiratory infection.

Based upon Mr. Langwell's present symptoms and medical history, Nurse Tyson diagnosed him with community acquired pneumonia ("CAP"). Nurse Tyson administered a DuoNeb treatment to dilate Mr. Langwell's bronchial tubes and gave Mr. Langwell an Albuterol inhaler to use as needed when he left the office. She also ordered an intramuscular injection of Rocephin, an antibiotic commonly used to treat CAP. Nurse Tyson prescribed the oral antibiotic Augmentin and the steroid Prednisone, and encouraged Mr. Langwell to drink fluids. Nurse Tyson sent Mr. Langwell to Albemarle Hospital for a chest x-ray to confirm the diagnosis of CAP. Nurse Tyson told Mr. Langwell to come back on Wednesday for a follow-up visit, but advised him to call or return to Albemarle sooner if his condition worsened.

Mr. Langwell went to Albemarle Hospital and had a chest x-ray taken.[1] He then returned home, where he remained on the couch for the remainder of the day before going upstairs to bed. Ms. Langwell checked on her husband periodically and testified that his condition never changed until around 11:00 p.m. At that time, Mr. Langwell experienced increased difficulty breathing and his mental status declined. Although his breathing became labored, Ms. Langwell never saw her husband gasping for air or fighting to breathe.

Ms. Langwell helped her husband into the car and propped him up against one of the rear doors. During the trip to Albemarle Hospital, Ms. Langwell noticed that Mr. Langwell was lying down in the back seat and didn't speak. Ms. Langwell assumed he was sleep-

1. Mr. Langwell's wife, Vickie Langwell, testified that someone called their home on that day to confirm Mr. Langwell's diagnosis of CAP.

ing. Upon arrival at the hospital, Mr. Langwell had no pulse, and was pronounced dead shortly thereafter.

An autopsy revealed that very few pneumococcus bacteria, which cause CAP, were present which indicated that the administration of Rocephin and Augmentin had been successful. Additionally, there was no indication of hypoxic injury or end-organ damage consistent with respiratory death. The autopsy also revealed that Mr. Langwell's three main coronary arteries were 80-90% stenosed, which indicated significant coronary artery disease. Pneumonia was listed as the cause of death on Mr. Langwell's death certificate.

Ms. Langwell ("Plaintiff"), the administratrix of her deceased husband's estate, filed suit against Albemarle and Nurse Tyson (collectively, "Defendants") on 22 June 2004 alleging medical negligence in that Nurse Tyson's care and treatment of Mr. Langwell was not in accordance with the applicable standard of care. The case was tried during the 19 May 2008 session of Camden County Superior Court, Judge Milton F. Fitch, Jr. presiding. The jury returned a verdict in favor of Defendants, and judgment was entered on 17 June 2008.

Following the verdict, Plaintiff moved for a new trial pursuant to Rule 59 of the North Carolina Rules of Civil Procedure for the following reasons:

    a. Manifest disregard by the jury of the instructions of the court.

    b. The jury's verdict appears to have been given under the influence of prejudice or other grounds not pertaining to the evidence.

    c. The verdict was contrary to the overwhelming evidence of [D]efendants' negligence.

    d. The [P]laintiff should have a new trial in the interest of justice.

On 15 September 2008, a hearing was held on Plaintiff's motion. At the hearing, Plaintiff based the motion for new trial "upon the jury's verdict being against the weight of the evidence and due to some prejudicial [sic] or passion on the part of the jury." When asked by the trial court to elaborate, the following exchange took place between Plaintiff's counsel and the court:

MR. THOMPSON: I don't mean prejudice in the normal sense but I think—

THE COURT: I understand that. I still just want to explore that.

LANGWELL v. ALBEMARLE FAMILY PRACTICE, PLLC

[203 N.C. App. 666 (2010)]

MR. THOMPSON: It just seems to me that the verdict of the jury was a shock to me based on the evidence that was presented, maybe a shock to the [c]ourt too. I don't know.

After hearing arguments from both parties, Judge Fitch announced, "[In] the [c]ourt's discretion the motion for a new trial is allowed." When Defendants requested that Judge Fitch specify the grounds for the granting of the new trial, Judge Fitch responded, "The reason for the granting of the motion for new trial is in the [c]ourt's discretion[.]"

On 16 September 2008, Defendants requested specific findings of fact and conclusions of law pursuant to Rule 52 of the North Carolina Rules of Civil Procedure. In response, Plaintiff drafted a proposed order with findings of fact and conclusions of law and submitted it to Judge Fitch for consideration. Defendants objected to the proposed order, arguing that the findings of fact were inaccurate, incomplete, and did not reflect the evidence admitted at trial. Specifically, Defendants objected to the omission of findings of fact regarding the testimony of expert witness Julee Waldrop, a certified family nurse practitioner, who testified that Nurse Tyson met the standard of care in treating Mr. Langwell. Defendants submitted a revised proposed order to Judge Fitch and Plaintiff on 1 December 2008. Judge Fitch rejected Defendants' revisions and entered the order drafted by Plaintiff's counsel on 8 December 2008.

From the trial court's order granting Plaintiff's motion for a new trial, Defendants appeal.

## II. Discussion

By Defendants' sole assignment of error, Defendants contend that the trial court erred in granting Plaintiff's motion for a new trial. We agree.

Pursuant to Rule 59(a)(7) of the North Carolina Rules of Civil Procedure, a judge may grant a new trial if there is insufficient evidence to justify the verdict or if the verdict is contrary to law. N.C. Gen. Stat. § 1A-1, Rule 59(a)(7) (2007). The Supreme Court of North Carolina has stated that " 'insufficiency of the evidence to justify the verdict' " indicates that the verdict " 'was against the greater weight of the evidence.' " *Nationwide Mut. Ins. Co. v. Chantos*, 298 N.C. 246, 252, 258 S.E.2d 334, 338 (1979).

A motion for a new trial pursuant to Rule 59 is generally addressed to the sound discretion of the trial court. *Harrell v.*

*Sagebrush of N.C., LLC*, 191 N.C. App. 381, 384, 663 S.E.2d 444, 446 (2008). Appellate review of the trial court's ruling on a Rule 59 motion "is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge." *Worthington v. Bynum*, 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982). "[A] manifest abuse of discretion must be made to appear from the record as a whole with the party alleging the existence of an abuse bearing that heavy burden of proof." *Id.* at 484-85, 290 S.E.2d at 604. "[A]n appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice." *Id.* at 487, 290 S.E.2d at 605; *accord Anderson v. Hollifield*, 345 N.C. 480, 483, 480 S.E.2d 661, 663 (1997).

A plaintiff in a medical malpractice action has the burden of proving the applicable standard of care, a breach of the standard of care, that the plaintiff's injuries were caused by the alleged breach, and the nature and amount of damages stemming from the injuries. *Weaver v. Sheppa*, 186 N.C. App. 412, 415, 651 S.E.2d 395, 398 (2007), *aff'd*, 362 N.C. 341, 661 S.E.2d 733 (2008). Because the issues involved in a medical malpractice action are typically beyond the general knowledge of a lay person, a plaintiff must "demonstrate by the testimony of a qualified expert that the treatment administered by defendant was in negligent violation of the accepted standard of medical care in the community and that defendant's treatment proximately caused the injury." *Ballenger v. Crowell*, 38 N.C. App. 50, 54, 247 S.E.2d 287, 291 (1978); *see also Lord v. Beerman*, 191 N.C. App. 290, 293-94, 664 S.E.2d 331, 334 (2008). "In malpractice cases[,] the applicable standard of care must be established by other practitioners in the particular field of practice or by other expert witnesses equally familiar and competent to testify to that limited field of practice." *Lowery v. Newton*, 52 N.C. App. 234, 239, 278 S.E.2d 566, 571, *disc. review denied*, 303 N.C. 711, *reconsideration denied*, 304 N.C. 195, 291 S.E.2d 148 (1981); *see also Harris v. Miller*, 335 N.C. 379, 399, 438 S.E.2d 731, 742 (1994).

It is well settled that "[i]t is the jury's function to weigh the evidence and to determine the credibility of witnesses." *Hollifield*, 345 N.C. at 483, 480 S.E.2d at 664. The plaintiff in a medical malpractice action will not prevail

> unless the trier of the facts is satisfied by the greater weight of the evidence that the care of such health care provider was not in

accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.

N.C. Gen. Stat. § 90-21.12 (2007). "The jury's function as trier of fact must be given the utmost consideration and deference before a jury's decision is to be set aside." *Di Frega v. Pugliese*, 164 N.C. App. 499, 510, 596 S.E.2d 456, 464 (2004) (citations and quotation marks omitted).

In this case, Defendants tendered Nurse Waldrop as an expert family nurse practitioner. Plaintiff objected, and the trial court excused the jury "for the purposes of voir dire of this particular witness as to her ability to testify as an expert." After voir dire, the trial court overruled Plaintiff's objection and "accept[ed] Ms. Waldrop as an expert in the field of family nurse practitioner." Nurse Waldrop testified as follows:

In Nurse Waldrop's expert opinion, the care Nurse Tyson provided to Mr. Langwell "met or exceeded the standard of care" that applied to her. Nurse Waldrop explained that Mr. Langwell's symptoms, which began three days before he came to Albemarle and included some shortness of breath, coughing, dizziness, vomiting, coughing up yellowish phlegm (some of which was blood-tinged), a low-grade fever, and chills, were all "potentially symptoms of respiratory infection." She noted that Mr. Langwell denied having any chest pain or palpitations, or any pain or difficulty breathing, and appeared alert and oriented during Nurse Tyson's physical examination of him. When Nurse Tyson listened to Mr. Langwell's chest, she heard coarse rhonchi in the upper and lower lobes of the lungs, which meant that she heard a "kind of rough sound." Nurse Waldrop listened to his heart and evaluated the rest of his respiratory tract, all of which appeared to be fine. While performing the examination, Nurse Tyson noted that Mr. Langwell was wet, sweaty, and warm.

Nurse Waldrop testified that Mr. Langwell's signs and symptoms were not consistent with shock of any kind, tissue perfusion, respiratory distress or failure, septicemia, septic shock, electrolyte imbalance, or hyperglycemia. Defense counsel asked Nurse Waldrop, "Based upon the way that Mr. Langwell presented with his signs and symptoms, was [CAP] a reasonable diagnosis in your opinion for [Nurse Tyson] to make as a [Family Nurse Practitioner]?" Nurse Waldrop responded, "Yes." Nurse Waldrop further clarified

that "it [was] a reasonable diagnosis for any health care provider to make[.]"

Nurse Waldrop further testified that the standard of care did not require that Mr. Langwell be admitted to the hospital upon his presentation to Albemarle. Nurse Tyson ordered an intramuscular injection of an appropriate antibiotic and prescribed additional oral antibiotics to be taken at home. Nurse Waldrop testified that, given Mr. Langwell's clinical status, Nurse Tyson's orders and clinical treatment were appropriate.

Defendants tendered Dr. Ricky Watson as an expert in the field of family medicine, and Dr. Watson was accepted by the court, without objection, as an expert witness. Dr. Watson testified that, in his expert opinion, Nurse Tyson's care and treatment of Mr. Langwell met or exceeded the applicable standard of care; Nurse Tyson exercised her best judgment based upon Mr. Langwell's presentation to her; and Nurse Tyson used reasonable care and diligence in the application of her skills and knowledge to the treatment of Mr. Langwell. Dr. Watson further opined that although Mr. Langwell did have pneumonia at the time of his death, the cause of Mr. Langwell's death was "cardiac arrhythmia."

Defendants also tendered Dr. Kerry Willis as an expert in the field of family practice medicine, and the trial court accepted Dr. Willis as an expert witness without objection. Dr. Willis testified that because Mr. Langwell was not experiencing respiratory distress at the time of his visit to Albemarle, Nurse Tyson's treatment was entirely appropriate. In fact, Dr. Willis characterized Nurse Tyson's treatment as aggressive in that she ordered an injection of antibiotics when a prescription of oral antibiotics would have been sufficient. Dr. Willis also testified that the standard of care did not require Nurse Tyson to admit Mr. Langwell to the hospital.

Dr. Willis agreed with Dr. Watson's assessment that Mr. Langwell did not die from pneumonia. According to the autopsy findings, Mr. Langwell had severe, three vessel coronary artery disease. Mr. Langwell was also diabetic. Based on these risk factors, along with the lack of damage to other organ systems, Dr. Willis opined that the likely cause of Mr. Langwell's death was cardiac arrhythmia.

The written order granting Plaintiff a new trial contains 11 findings of fact pertaining to the evidence presented at trial. While ten of those findings recite selected facts in the light most beneficial to

Plaintiff's position, only one finding refers to Defendants' evidence. This finding states:

> Defendants offered the testimony of Tamely Tyson and also the expert opinion of Dr. Ricky Lee Watson and Dr. Kerry A. Willis, both of whom were board certified in family practice. Defendants' experts testified that, in their opinion, Tamely Tyson did not breach the standard of care in sending Jeffrey Langwell home and not sending him to the emergency room, and further they opined that Jeffrey Langwell did not die from pneumonia but died as a result of cardiac arrest.

This sole finding of fact concerning Defendants' evidence omits any reference to Nurse Waldrop and her testimony. At issue in this case is the alleged negligence of Nurse Tyson, a family nurse practitioner. Thus, two of the essential issues to be determined are the standard of care applicable to a family nurse practitioner and whether Nurse Tyson breached that standard of care. Nurse Waldrop was accepted by the trial court "as an expert in the field of family nurse practitioner." Accordingly, as a practitioner in the particular field that Nurse Tyson practiced in, Nurse Waldrop was qualified to render her expert opinion on the standard of care applicable to Nurse Tyson and whether Nurse Tyson breached that standard. *Newton*, 52 N.C. App. at 239, 278 S.E.2d at 571.

While the order fails to mention Nurse Waldrop's testimony, the order contains the following finding of fact regarding Plaintiff's expert witness:

> Plaintiff also offered the testimony of Cheryl Clark, a family nurse practitioner, who also opined that the family nurse practitioner, Tamely Tyson, breached the standard of care by not sending Jeffrey Langwell to the emergency room at Albemarle Hospital.

Nurse Waldrop's testimony was directly contrary to Cheryl Clark's testimony as to whether Nurse Tyson had met the applicable standard of care in her treatment of Mr. Langwell. Neither the qualifications of either family nurse practitioner nor the substance of their testimony has been assigned as error on appeal. Although neglecting to mention a witness's testimony in the court's findings of fact is not an abuse of discretion *per se*, by omitting any reference to Nurse Waldrop's critical expert testimony, the order on its face reveals that the trial court failed to consider all the competent and relevant evidence presented at trial.

The order also contains the following finding of fact:

> It is the opinion of the Court and in the Court's discretion that the jury has been misled by unreliable testimony on the part of the defense and that in the opinion of the Court and its discretion a jury has returned an erroneous verdict.

However, the trial judge does not identify any unreliable testimony submitted by Defendants. Furthermore, Plaintiff did not object to any testimony at trial on the basis of unreliability. Moreover, Plaintiff did not argue in her motion for a new trial that any testimony was unreliable and does not argue on appeal that any specific defense testimony was unreliable. Indeed, had Defendants' expert witnesses offered unreliable testimony, that evidence would have been inadmissible. However, Plaintiff's objection to Nurse Waldrop's qualification as an expert witness was overruled, and Plaintiff did not argue in her motion for a new trial and does not argue on appeal to this Court that the trial court erred in overruling her objection. Furthermore, Plaintiff did not object to the qualification of Defendants' remaining expert witnesses as competent experts in their fields, and Plaintiff did not argue in her motion before the trial court or on appeal to this Court that those witnesses were incompetent to testify to their opinions. For these reasons, we find no support for the trial court's Rule 59 order in its "finding" that the jury was "misled" by "unreliable testimony on the part of the defense[.]"

Accordingly, we are "reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice." *Bynum*, 305 N.C. at 487, 290 S.E.2d at 605.

For the reasons stated, the order setting aside the verdict and awarding Plaintiff a new trial is reversed, the verdict is reinstated, and this cause is remanded to the superior court for entry of judgment in accordance with the verdict returned by the jury.

REVERSED and REMANDED.

Judges CALABRIA and GEER concur.