LEO V. BARNES, appellant, v. DR. D. O. BOVENMYER, appellee.

No. 50851.

(Reported in 122 N.W.2d 312)

June 11, 1963.

Hugh Lundy, of Albia, and H. S. Life, of Oskaloosa, for appellant.

Gilmore, Dull & Keith, of Ottumwa, for appellee.

GARFIELD, C. J.—This is a law action by Leo V. Barnes to recover from Dr. D. O. Bovenmyer, an eye specialist in Ottumwa, for loss of plaintiff's left eye alleged to have resulted from defendant's negligence in diagnosing and treating an injury thereto. At the close of plaintiff's case the trial court directed a verdict for defendant because of claimed insufficient evidence. From judgment thereon plaintiff has appealed.

Ten grounds were asserted in support of the motion to direct. The first two were that plaintiff failed to offer evidence of his freedom from contributory negligence and was contributorily negligent as a matter of law. The next three grounds asserted insufficient evidence of any negligence of defendant as alleged by plaintiff. The next three grounds of the motion were that there is no evidence any alleged negligence of defendant was the proximate cause of plaintiff's loss and damage and the evidence refutes such claim. The last two grounds of the motion were general and need not be considered.

I. The ruling on the motion to direct does not comply with this mandatory requirement of rule 118, Rules of Civil Procedure: "A motion * * * involving separate grounds * * * shall be disposed of by separate ruling on each and not sustained generally." The ruling was, "There is clearly an absence of es-

sential proof in a case of this type and the motion is sustained." The court's remarks to the jury indicated the ruling was based on the fact no doctor expressed an opinion as to defendant's negligence or, if there was such, that it was the proximate cause of plaintiff's injury.

During the 20 years since its adoption we have so often called attention to the importance of compliance with rule 118 it should not be necessary to do so again. See Mooney v. Nagel, 251 Iowa 1052, 1054, 1055, 103 N.W.2d 76, 78, and citations; In re Condemnation of Certain Land, 253 Iowa 1130, 1134, 114 N.W.2d 290, 292.

Fortunately defendant has somewhat narrowed the issues on appeal by telling us in oral argument he does not rely on contributory negligence and his printed brief does not seek to uphold the judgment on either of the first two grounds of the motion to direct. We may observe there is substantial evidence plaintiff exercised ordinary care in the matter in controversy and a holding he was contributorily negligent as a matter of law would be not justified.

This leaves the two questions which are present in so many actions to recover for injury to the person—1) sufficiency of the evidence of defendant's negligence and, 2) if there is such, that it was the proximate cause of the injury.

II. These propositions are deemed so well established that authorities need not be cited in support of them: In considering the propriety of a directed verdict for defendant we give plaintiff's evidence the most favorable construction it will reasonably bear. Generally questions of negligence and proximate cause are for the jury; it is only in exceptional cases that they may be decided as matters of law. See rule 344(f)2 and 10, R. C. P.

III. About 6:30 in the evening of Sunday, June 29, 1958, a small piece of steel pierced plaintiff's left eye and lodged in it. It flew from a hammer or hatchet used by another person. The eye colored up and blood from the wound went clear to plaintiff's belt. Defendant, an ophthalmologist or eye specialist, was immediately called but could not be reached. Plaintiff then called the Ottumwa hospital and arrived there not later than 7:15. Dr. D. D. Emerson, a general practitioner for a year in

Ottumwa, was on call, examined the eye externally and with an ophthalmoscope, saw an injury to the eye which was externally apparent, ordered X rays taken of the eye and then called defendant.

An ophthalmoscope is an instrument for viewing the interior of the eye. Seven X rays of the eye were taken, at least some of which showed the foreign body in the eye.

When defendant arrived he also examined the eye externally and with the ophthalmoscope, to look through the eye for possible foreign bodies in it and for damage to the eye that might be detected. Defendant, Doctor Emerson and the radiologist then examined the X rays. Doctor Emerson testifies none of them saw the foreign body in the eye nor in the X rays thereof. The two named doctors did see a red spot on the sclera, white part of the eye, which Doctor Emerson says could have been a bruise and could have been a point of entry into the eye of a foreign body. "It was possible either way. You never know for sure."

There was also an injury to the lower eyelid into which defendant probed and removed therefrom a small piece of steel. Doctor Emerson and, apparently, defendant thought this was the only foreign body in the region of plaintiff's eye and no attempt was made that evening to remove the piece of steel imbedded in the eyeball.

Doctor Emerson, called as a witness by plaintiff, testifies on cross-examination that after defendant removed the foreign body from the eyelid defendant told plaintiff he thought the foreign body was removed and he would probably be all right but he wanted him to return to his office the next morning. "I heard Dr. Bovenmyer urge the patient to return to his office the next morning. *I figure that is part of the treatment.* I did not object to that direction or treatment. *I regarded that treatment as usually customary and the standard of care for treatment of such patients in June, 1958.*"

We regard the quoted testimony as of vital importance on the issue of defendant's negligence. There is no evidence contrary to the part we have emphasized. However, there is a sharp dispute as to what defendant told plaintiff when he left the hos-

pital that evening. Plaintiff denies defendant said he wanted to see him the next morning, he insists he asked defendant if he cared to see him again, defendant told him it was not necessary and there was no reason he could not go to work the next evening. Plaintiff also says he was in the building where defendant's office was on an errand the following (Monday) morning but did not go in because of what defendant told him the evening before.

Plaintiff worked nights at an Ottumwa plant, from 11 p.m. to 7 a.m. He worked Monday night as he says defendant told him he could. Before the night was over he suffered almost unbearable pain in his eye. He went to defendant's office about 8:15 Tuesday morning but was unable to contact defendant. The lady in charge of the office told him defendant would be there that afternoon and plaintiff could contact him then.

Plaintiff returned to the office a little after four. Defendant examined the eye, sent him to another office in the same building to get more X rays promptly, plaintiff went right to the radiologist as directed, after the X rays were taken he was told to return promptly to defendant's office and he did. "Very shortly after my return, Dr. Bovenmyer told me there was a foreign body in my eye and I should go very promptly to Iowa City and have that foreign body removed and I did. He told me we would call the hospital at Iowa City. * * * He said we are going to Iowa City *and we want to get there as quick as we can.*"

Doctor Emerson testifies defendant told him on or after July 2 (Wednesday) he saw plaintiff Tuesday afternoon, sent him for his follow-up X ray, appearance of the eye was not right, "on the X rays taken July first there was still the foreign body present that it showed on the original X rays on June 29." Also that defendant told him plaintiff did not report back Monday morning as the witness understood plaintiff was to do, defendant saw the eye Tuesday afternoon "and ordered it re-X rayed immediately."

Plaintiff's father drove him to Iowa City Tuesday evening. He went right to the eye ward at the State University Hospitals, physicians examined the eye, found a metallic foreign body in it, more X rays were taken, an eye surgeon was called that same

evening, an incision was made in the sclera of the eye and in 10 or 15 minutes a piece of steel was removed through the incision with a magnet. The piece was shaped somewhat like a half moon, about $\frac{1}{16}$-inch wide and $\frac{1}{8}$-inch long.

The eye was inflamed from infection in it. After treating this condition for 18 days in the University Hospitals in an attempt to save the eye, it was found necessary to remove it on July 19. Plaintiff was sent home from the hospitals on July 24.

The University Hospitals' record of plaintiff for July 1 contains this statement: "Dr. Bovenmyer removed a piece from lower lid Sunday night & let go." Whether the information defendant let plaintiff go Sunday night was obtained from plaintiff or defendant does not appear. The exhibit referred to was admitted in evidence without objection. It tends to corroborate plaintiff's version of what defendant told him before they parted Sunday night. Another part of the University Hospitals' record describes plaintiff's eye injury as "perforation."

The roentgenologist's report of the X rays taken in the Ottumwa hospital contains this: "Views of the orbit reveals evidence of a sharp metallic foreign body measuring approximately 2 mm. in length and 1 mm. in width, in the region of the left orbit. Metallic density appears to be in the anterior and lateral quadrant of the eyeball."

IV. We hold there is substantial evidence of defendant's negligence as alleged by plaintiff. The clearest such evidence is to the effect defendant assured plaintiff before they separated Sunday evening it would be unnecessary for him to see defendant again and he could go to work at the plant the following evening, together with Doctor Emerson's testimony, brought out by defendant, that it was part of the usually customary treatment and the standard of care for treatment of such patients at that time for the physician to direct the patient to see him the following morning. Presumably this would be so further examination of the injury could be made, as was done Tuesday when defendant decided the piece of steel was in the eye.

It is obvious the jury could believe Doctor Emerson's testimony to which we have just referred. As stated, it is not disputed. It is also plain the jury could believe the testimony that

defendant gave plaintiff no such direction as Doctor Emerson says was usually customary treatment and the standard of care therefor.

■ We have said, "* * * it is the duty of a physician, in taking charge of a case, to follow the case, and to give proper instructions to the patient as to his future acts and conduct." Ramberg v. Morgan, 209 Iowa 474, 478, 218 N.W. 492, 495. Plaintiff testifies, "Dr. Bovenmyer took over when he arrived."

■ While not conclusive, evidence of what is usual and customary is generally admissible on the issue of negligence and, coupled with a showing the custom was not followed, is sufficient to raise a jury question on such issue. Bradshaw v. Iowa Methodist Hospital, 251 Iowa 375, 385, 101 N.W.2d 167, 173, and citations; Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 712, 107 N.W.2d 85, 89.

■ The fact Doctor Emerson was a general practitioner, not a specialist in treating eye injuries, does not go to the admissibility of his opinion testimony. Shover case, supra, and citations, page 713 of 252 Iowa, page 89 of 107 N.W.2d; In re Estate of Springer, 252 Iowa 1220, 1230, 1231, 110 N.W.2d 380, 386, 387, and citations. Nor is such a question raised.

■ One of plaintiff's charges of negligence was that defendant failed to use reasonable care in advising plaintiff to return to his work at a time when a piece of steel was lodged in his eye. The evidence to which we have referred supports this charge. Other charges of negligence were that defendant failed to use reasonable care in conducting a proper examination of plaintiff's injured eye and properly diagnosing the nature and character of the injury. There is also substantial support for these charges.

It must be admitted defendant was in error in his original diagnosis on Sunday evening that no foreign body was lodged in the eye. But this in itself is insufficient to prove negligence. Wilson v. Corbin, 241 Iowa 593, 600, 41 N.W.2d 702, 706, and citation. It may be assumed defendant was not negligent prior to the removal of the foreign body from the eyelid. However, as we have tried to explain, there is expert testimony it was usually customary and the standard of care for the physician to direct such patients to return for further examination the following morning and evidence this direction was not given.

Because of his intense pain plaintiff, of his own volition, returned to defendant Tuesday. Shortly after defendant examined plaintiff again on Tuesday afternoon and the follow-up X rays were taken, the foreign body in the eye was located. It is fair to infer this would have been done Monday morning if defendant had followed the standard of care shown to be customary in such matters. Indeed no reason is suggested why this usual follow-up examination could not have been made Sunday evening, the piece of steel in the eye then located and removed, either in Ottumwa or Iowa City.

We have said at least three times that malpractice may consist in lack of skill or care in diagnosis as well as in treatment. A patient is entitled to a thorough and careful examination such as his condition and attending circumstances will permit, with such diligence and methods of diagnosis as are usually approved and practiced by physicians of the same school of medicine, of ordinary learning, judgment and skill, under like circumstances and in like localities. Wilson v. Corbin, supra, 241 Iowa 593, 599, 41 N.W.2d 702, 705, and citations; Wheatley v. Heideman, 251 Iowa 695, 704, 102 N.W.2d 343, 349, and citations.

And a physician who, like defendant, is a specialist, is required to exercise that degree of skill and care ordinarily used by similar specialists in like circumstances, not merely the average skill and care of a general practitioner. McGulpin v. Bessmer, 241 Iowa 1119, 1132, 43 N.W.2d 121, 128, and citations.

V. Of course proof of defendant's negligence did not entitle plaintiff to go to the jury. There must also be substantial evidence it was the proximate cause of plaintiff's damage. Plaintiff's brief furnishes us no help on this phase of the case. No error is assigned on this issue. It is not discussed except for two unrelated sentences at different places in the body of the argument. Loss of an eye, however, is no trivial matter. Hence, as a matter of grace, we have searched the record long and hard for evidence of proximate cause. We cannot find it. We do not think it is there.

The issue of proximate cause boils down to this: The jury could find defendant was negligent in not discovering and ad-

vising removal of the piece of steel from the eyeball before late afternoon July 1, and that with ordinary skill and care he would have done this the morning of the preceding day. It may even be conceded the piece in the eye should have been discovered Sunday evening. Is there any evidence this delay of 36 or 48 hours probably caused loss of the eye? As indicated, we are compelled to hold there is none. Further, the evidence on the question is that the delay probably did not cause loss of the eye.

█ █ The matter of causal connection between defendant's negligence and loss of plaintiff's eye is not within the knowledge and experience of ordinary laymen. It is a question upon which only a medical expert can express an intelligent opinion. It is a question essentially within the domain of expert testimony. Bradshaw v. Iowa Methodist Hospital, supra, 251 Iowa 375, 383, 101 N.W.2d 167, 171, and citations.

This is ordinarily the rule in actions of this kind. Annotations, 141 A. L. R. 5, 6–12; 13 A. L. R.2d 11, 31–34. We are fully aware there are exceptions to the rule. See annotations last above. One exception we have recognized several times is where the harmful result of the negligence is so obvious as to lie within common knowledge. This exception cannot be applied here.

█ The accepted method of proving proximate cause would be by expert testimony that defendant's delay in discovering the piece of steel in the eye was the probable cause of its loss. Some decisions say it is sufficient to furnish substantial evidence upon which a reasonable basis for inference may be had, provided the matter is not left to conjecture and speculation. Ramberg v. Morgan, 209 Iowa 474, 486, 487, 218 N.W. 492; Annotation, 59 A. L. R. 884, 886–890.

The only expert witness was Doctor Emerson, called by plaintiff. He proved to be a much better witness for defendant than for plaintiff on the issue of proximate cause. Plaintiff's counsel did not question the doctor on this issue but asked some questions on the issue of negligence. On cross-examination Doctor Emerson more than once expresses the opinion failure to remove the foreign body at an earlier time in all probability did not cause loss of the eye, infection entered it when the piece of steel did and removal of the steel would not remove the infection

which caused loss of the eye. There may be circumstances to cast doubt on this negative testimony. However, even if it were not accepted, it would not supply the requisite affirmative proof of proximate cause.

An extended annotation in 13 A. L. R.2d 11, 98, on proximate cause in malpractice actions contains this appraisal of those similar to this: "A large proportion of eye injuries arise from the accidental introduction into the eye of foreign objects, and a number of malpractice cases have been based on the doctor's allegedly negligent failure to discover and remove such objects. These cases have frequently turned upon the question whether prompt removal would have been helpful in any event, since, if not, the failure to remove the object creates no liability even if negligent. In most of the instances involving eye injuries from foreign objects causation has been held not to have been established."

See also annotation, 68 A. L. R.2d 426, 430 to 433, on malpractice in eye treatment and surgery.

Although the question is not argued or suggested, we have considered whether the evidence is sufficient to justify a finding defendant's negligence caused temporary pain and suffering for which some recovery could be had, as in Kosak v. Boyce, 185 Wis. 513, 201 N.W. 757. In our opinion there is no sufficient basis for such an allowance.

Our conclusion on the question of proximate cause leads to an affirmance.—Affirmed.

All JUSTICES concur.