Elaine DeBURKARTE and Donald De-
Burkarte, Husband and
Wife, Appellees,

v.

Richard D. LOUVAR, D.O., Appellant.

No. 85–1024.

Supreme Court of Iowa.

Sept. 17, 1986.

Raymond R. Stefani and Richard A. Ste-
fani of Silliman, Gray & Stapleton, Cedar
Rapids, for appellant.

Tom Riley, T. Todd Becker and Mary K.
Hoefer of Tom Riley, P.C., Cedar Rapids,
for appellees.

LAVORATO, Justice.

In this medical-malpractice action the district court entered judgment, based on a jury's verdict, against the defendant, Richard D. Louvar, D.O. He now appeals and challenges the sufficiency of the evidence on negligence and proximate cause. He also asserts the court erred in instructing on proximate cause, in overruling his objections to expert testimony, and in submitting a claim for lost consortium to the jury. Finally, he argues the damages are excessive and unsupported by the evidence. In their cross-appeal the plaintiffs, Elaine and Donald DeBurkarte, contend the court erred in failing to give their requested instruction on burden of proof. We affirm the judgment of the district court.[1]

The jury could have found the following facts. On the evening of August 26, 1981, Elaine found a lump in her left breast. Because her sister died of breast cancer, she made an appointment the next day with Dr. Louvar, who examined her and ordered a mammogram, an x-ray of the breast. The results of the mammogram were negative.

The lump in her breast did not go away, and she returned to Dr. Louvar, less than a month later, in September. He assured her the lump was only a cyst, and not cancerous. He advised her to perform self-examinations, and not to return for a year.

Over the next nine months Elaine saw Dr. Louvar seven times. Each time she drew his attention to the lump, but Dr. Louvar merely palpated it. He was aware her age and family history placed her in the category of women particularly at risk for breast cancer. He was also aware the lump was located in the area of the breast where most cancerous tumors are found.

In April, 1982, Elaine discovered another lump in her breast. This one was between the first lump and the nipple. Dr. Louvar examined her the next day. He told her to return for an appointment after her menstrual period. Elaine forgot about the appointment; however, she returned for an examination in June. After examining Elaine, Dr. Louvar referred her to a surgeon, Dr. Robert Brimmer.

Dr. Brimmer examined Elaine one week later and performed a needle aspiration in both lumps. No fluid was withdrawn from either lump, leading him to conclude they were not cysts. He performed a biopsy the following day, and test results indicated the lumps were cancerous. Elaine then underwent a mastectomy.

Elaine was examined by Dr. Brimmer every three months. In July, 1983, tests revealed that the cancer had spread to her spine and leg. Dr. Brimmer referred Elaine to Dr. D.H. Gesme, Jr., an oncologist, for radiation therapy. Elaine's ovaries were removed because of the cancer in August, 1983.

The DeBurkartes then brought this action, alleging Dr. Louvar failed to diagnose her cancer at a stage when removal of the lump could have arrested the cancer. She requested damages for disfigurement, past and future pain and suffering, emotional distress, medical expenses, shortening her life, and death. Her husband requested damages for lost consortium.

The district court denied a motion for directed verdict, Iowa R.Civ.P. 216, and the jury returned a verdict against Dr. Louvar. The district court entered judgment for $405,000 for Elaine and $40,000 for her husband. It then denied motions for judgment notwithstanding the verdict, Iowa R.Civ.P. 243, and for new trial, Iowa R.Civ.P. 244.

I. *Sufficiency of evidence.*

A physician is liable for injury to a patient caused by failure of the physician to apply that degree of skill, care, and learning ordinarily possessed and exercised by other physicians in similar cir-

---

1. In doing so, we need not address the issue raised in the cross-appeal. We also need not address the plaintiffs' claim for punitive dam-

ages, because no appeal was taken from the district court's refusal to submit that issue to the jury.

cumstances. Ordinarily, questions of negligence and proximate cause are for the trier of fact.... If supported by substantial evidence, the findings of a trier of fact on negligence and proximate cause are binding on us.

*Speed v. State*, 240 N.W.2d 901, 904 (Iowa 1976) (citations omitted). Moreover, in considering the propriety of a motion for directed verdict, we view the evidence in the light most favorable to the party against whom the motion was made. Iowa R.App.P. 14(*f*)(2).

*A. Negligence.* The defendant contends he was not negligent as a matter of law because the evidence failed to establish he should have ordered further diagnostic testing after first examining the plaintiff. The plaintiffs' evidence, however, established he did not exercise ordinary care in making his diagnosis.

Dr. Maurice Rosman, an osteopath in general practice in Philadelphia, testified:

Q. [L]et's assume ... that a forty-two-year-old woman with a known history of a sister having died from breast cancer [comes] to her family physician on August 27, 1981, with a complaint of a lump in her left breast, ... that the family practitioner finds what he notes as a mass in the upper outer quadrant of the left breast, and ... that he has a mammogram taken on September 3, 1981, that is negative for cancer, but shows moderate dysplasia in both breasts. [Let's also] assume that the patient [returns to] his office on September 22, 1981, with the mass essentially unchanged. What would such a family practitioner do for the further care and diagnosis of such patient, if he were to exercise that standard of care ordinarily possessed and exercised by family practitioners? ... A. I feel that that case deserves further evaluation. That there be needle biopsy, open biopsy, with excision of the mass.... I feel that the case should be referred to a surgeon who handles breast masses, and let him make his decision what he wants to do. Needle biopsy or open biopsy.

Q. And with what objective in mind? A. To determine, to make a diagnosis, primarily, to see what it is.

Q. ... And if a family practitioner in 1981 failed to do that, would it be a deviation or breach of such ordinary care? ... A. I feel so.

. . . . .

Q. What is the only definitive way to determine whether a mass is cancerous or not ...? A. The only way to tell definitively is by biopsy ·and examining the tissue ... and determining under a microscope [whether] it [is] benign or ... malignant. That's the only way.

Other experts supported Dr. Rosman's testimony. Dr. Brimmer testified that palpation alone would not reveal whether a lump was cancerous or cystic, and that a biopsy was necessary to make a proper diagnosis. Dr. Brimmer also testified he would not ignore, for two to three months, a breast lump in a woman of the plaintiff's age and family background. He further testified most breast cancers are located in the area in which the plaintiff's cancer was found.

Dr. Gesme agreed a mammogram would not rule out the presence of cancer. He testified the only definitive method of determining whether a breast lump is cancerous is by biopsy. He also agreed cancer is most commonly located in the area of the breast in which the plaintiff's lump was found. He added that a patient's family history of breast cancer increases the risk that she will suffer from it.

■ We agree with the defendant that testimony on what another physician would do is not sufficient to establish a standard of care. *See Freeze v. Lemmon*, 267 N.W.2d 680, 688 (Iowa 1978). In this case, however, Doctors Brimmer, Gesme, and Rosman all testified a family physician discovering a persistent lump should not allow it to continue undiagnosed without a biopsy. More important, the defendant admitted that during the plaintiff's first visit she informed him of her sister's death from breast cancer; that he knew a mammo-

gram could produce a misleading negative; and that he advised her against a biopsy even though he was uncertain of his clinical impression.

We believe the district court did not err in denying the motion for directed verdict on this ground.

■ *B. Proximate cause.* The defendant contends there was insufficient evidence his conduct caused the plaintiff's injuries. He argues expert testimony did not establish the cancer was present and diagnosable during her first visits. He also argues there was no expert testimony his failure to properly diagnose the cancer probably caused her injuries. *See Speed,* 240 N.W.2d at 906–907.

*(1).* Preexistence of cancer. The defendant contends the lump did not reach the size where he could detect it until June, 1982. He argues the lump that was removed by Dr. Brimmer was neither the one the plaintiff discovered nor the one he first examined.

The defendant's initial record reveals that the lump in "the upper outer quadrant of the left breast" was three-by-two centimeters. In September, 1981, and again, in March, 1982, he noted the lump was essentially unchanged.

In April, he noticed a tenderness in the plaintiff's breast. In June, he wrote that the lump "in the oblong axis along the upper outer quadrant" had grown to approximately four-by-five centimeters. At that time the defendant, concerned that the lump might be a malignant lesion, referred her to Dr. Brimmer.

Dr. Brimmer testified he found two lumps in the plaintiff's breast. He described the larger one, which was in the upper outer quadrant of her breast, as approximately three-by-two centimeters. He located a second one, about one centimeter in diameter, outside the nipple. Because the two lumps were only a few centimeters apart, they were difficult to define exactly. He could palpate no other lumps in her breast. His records reveal the plaintiff was referred to him

*because of a left breast mass. She has noted a lump in the upper part of her breast for one year.... Dr. Louvar feels that the mass has changed in shape and also probably has increased in size.* A mammogram done in September of 1981 was unremarkable; however, because of a persistence of a mass, she is now referred for evaluation.

(Emphasis added.) In performing the biopsy Dr. Brimmer removed the majority of the larger lump and all of the smaller one. Test results indicated both were cancerous. In Dr. Brimmer's opinion the smaller lump developed from the larger one.

The defendant's entry in the hospital record at the biopsy states she was admitted for treatment of:

A breast mass [that] approximately a year ago ... seemed a little bit lateral to where she had the present mass, which I palpated about two months ago.

Dr. Rosman opined that this mass was the same cancerous lump removed by Dr. Brimmer, and that it would have been detectable on biopsy in September, 1981.

On the other hand, Dr. John Spratt, an oncologist and surgeon, testified the cancer was not diagnosable at that time. He opined that the cancer began in December, 1981, and that it only became detectable shortly before the defendant examined the plaintiff in June, 1982. On cross-examination, however, Dr. Spratt conceded the assumptions underlying his analysis, if inaccurate, would affect his result substantially: growth of the cancer could take as much as three or four times longer than he calculated. Dr. Brimmer essentially confirmed this concession. Dr. Spratt also conceded there was no definite method to measure the growth of cancer. Thus, the cancer could have been present more than two years before Dr. Brimmer discovered it in June, 1982.

We believe there was substantial evidence the lump the defendant first examined was the one removed by Dr. Brimmer. Indeed, the defendant essentially admitted this fact in his entry in the hospital record at the biopsy. *See Wiles v. Myerly,* 210

N.W.2d 619, 628 (Iowa 1973). Accordingly, the district court did not err in refusing to direct a verdict on this ground.

(*2*). Proof of causation; lost chance of survival.

Section 323 of the Restatement provides:

One who undertakes ... to render services to another which he should recognize as necessary for the protection of the other's person ... is subject to liability ... for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care *increases the risk of such harm....*

Restatement (Second) of Torts § 323(a), at 135 (1965) (emphasis added). This section encompasses the "lost chance of survival" theory advanced by the plaintiff in this case.

The plaintiff's experts, Doctors Rosman, Brimmer, and Gesme, testified that the earlier a cancer is discovered, the higher the probability a patient may be cured. Dr. Rosman opined that within a reasonable degree of medical certainty the plaintiff's chances of surviving ten years would have been at least fifty and as high as eighty percent if the lump had been removed in September, 1981. At the time of trial, however, Dr. Rosman felt that her chances of surviving another ten years were zero. A published medical report confirmed his testimony. Similarly, Dr. Gesme testified that at the time of trial the plaintiff would not live more than three years.

We have not had an opportunity to decide whether a plaintiff may recover for a lost chance of survival. A federal court, however, has construed our survival statute to allow recovery for the loss of a not-better-than-even chance of survival. *See O'Brien v. Stover*, 443 F.2d 1013, 1018 (8th Cir.1971).

We recognize that the plaintiff's injury may be viewed as a shortening of her life, in which case we would agree with the defendant that the plaintiffs did not produce substantial evidence on causation: there was no evidence the plaintiff's cancer probably spread after September, 1981, preventing her from being cured. *See Barnes v. Bovenmyer*, 255 Iowa 220, 229, 122 N.W.2d 312, 317 (1963) (in medical-malpractice action, expert testimony is generally necessary to establish causation). On the other hand, as the Restatement indicates, her injury may also be viewed as a lost chance to survive the cancer.[2] The jury could then find from the evidence that the defendant's failure to diagnose and treat the cancer probably caused a substantial reduction in the plaintiff's chance to survive it.

One commentator has observed that courts have been troubled by causation in cases for lost chance of survival:

Causation [in tort] has for the most part been treated as an all-or-nothing proposition. Either a loss was caused by the defendant or it was not. Inexplicably, the all-or-nothing approach of the causation inquiry has been allowed to slip its analytical moorings, influencing the identification and valuation of losses in cases involving preexisting conditions and claims for future consequences. A plaintiff ordinarily should be required to prove by the applicable standard of proof that the defendant caused the loss in question. *What* caused a loss, however, should be a separate question from what the *nature and extent* of the loss are. This distinction seems to have eluded the courts, with the result that lost chances in many respects are compensated either as certainties or not at all.

King, *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences*, 90 Yale L.J. 1353, 1363 (1981).

It is therefore not surprising that courts are divided in determining whether to recognize an action for a lost chance of surviv-

---

**2.** In this case the evidence established the plaintiff's chance of survival as not better-than-even: Dr. Rosman opined that within a reasonable degree of medical certainty the plaintiff's chances of surviving ten years would have been *at least fifty* and as high as eighty percent if the lump had been removed in September, 1981.

al in medical malpractice. Some courts neither expressly nor impliedly recognize it, requiring expert testimony that but-for the defendant's negligence the patient would probably have survived. *See Rewis v. United States*, 503 F.2d 1202, 1205 (5th Cir.1974) (applying New Mexico law); *Morgenroth v. Pacific Medical Center Inc.*, 54 Cal.App.3d 521, 126 Cal.Rptr. 681, 688–89 (1976); *Gooding v. University Hospital Building, Inc.*, 445 So.2d 1015, 1018–1020 (Fla.1984); *Walden v. Jones*, 439 S.W.2d 571, 576 (Ky.App.1968); *Cornfeldt v. Tongen*, 295 N.W.2d 638, 640 (Minn.1980); *Clayton v. Thompson*, 475 So.2d 439, 445 (Miss.1985); *Cooper v. Sisters of Charity of Cincinnati, Inc.*, 27 Ohio St.2d 242, 272 N.E.2d 97, 104 (1971). They reason that

> [r]elaxing the causation requirement might correct a perceived unfairness to some plaintiffs who could prove the possibility that the medical malpractice caused an injury but could not prove the probability of causation, but at the same time [it] could create an injustice. Health care providers could find themselves defending cases simply because a patient fails to improve or where serious disease processes are not arrested because another course of action could possibly bring a better result. No other professional malpractice defendant carries this burden of liability without the requirement that plaintiffs prove the alleged negligence probably rather than possibly caused the injury.

*Gooding*, 445 So.2d at 1019–20.

On the other hand, most courts recognize the action for lost chance of survival in medical malpractice. *See McBride v. United States*, 462 F.2d 72, 75 (9th Cir.1972) (applying Hawaii law); *O'Brien*, 443 F.2d at 1018 (applying Iowa law); *Jeanes v. Milner*, 428 F.2d 598, 604–605 (8th Cir. 1970) (applying Arkansas law); *Hicks v. United States*, 368 F.2d 626, 632–33 (4th Cir.1966) (applying Virginia law); *Mays v. United States*, 608 F.Supp. 1476, 1482 (D.Colo.1985) (applying Colorado law); *James v. United States*, 483 F.Supp. 581, 587 (N.D.Cal.1980) (applying California law); *Thompson v. Sun City Community*

*Hospital, Inc.*, 141 Ariz. 597, 688 P.2d 605, 616 (1984); *Sharp v. Kaiser Foundation Health Plan*, 710 P.2d 1153, 1156 (Colo. App.1985); *Northern Trust Co. v. Louis A. Weiss Memorial Hospital*, 143 Ill.App.3d 479, 97 Ill.Dec. 524, 529–30, 493 N.E.2d 6, 11–12, (1986); *Roberson v. Counselman*, 235 Kan. 1006, 686 P.2d 149, 159–60 (1984); *Glicklich v. Spievack*, 16 Mass.App. 488, 452 N.E.2d 287, 292, *reh'g denied*, 454 N.E.2d 1276 (Mass.1983); *Aasheim v. Humberger*, 695 P.2d 824, 828 (Mont.1985); *Evers v. Dollinger*, 95 N.J. 399, 471 A.2d 405, 415 (1984); *Kallenberg v. Beth Israel Hospital*, 45 App.Div.2d 177, 357 N.Y.S.2d 508, 510–11 (1974), *aff'd*, 37 N.Y.2d 719, 374 N.Y.S.2d 615, 337 N.E.2d 128 (1975); *Morrison v. Stallworth*, 73 N.C.App. 196, 326 S.E.2d 387, 393 (1985); *Jones v. Montefiore Hospital*, 494 Pa. 410, 431 A.2d 920, 924 (1981); *Sherer v. James*, 286 S.C. 304, 334 S.E.2d 283, 285 (App.1985); *Truan v. Smith*, 578 S.W.2d 73, 76–77 (Tenn.1979); *Cloys v. Turbin*, 608 S.W.2d 697, 701 (Tex. Civ.App.1980); *Brown v. Koulizakis*, 229 Va. 524, 331 S.E.2d 440, 446 (1985); *Herskovits v. Group Health Cooperative*, 99 Wash.2d 609, 664 P.2d 474, 479 (1983). As one court has stated:

> When a defendant's negligent action or inaction has effectively terminated a person's chance of survival, it does not lie in the defendant's mouth to raise conjectures as to the measure of the chances that he has put beyond the possibility of realization. If there was any substantial possibility of survival and defendant has destroyed it, he is answerable. Rarely is it possible to demonstrate to an absolute certainty what would have happened in circumstances that the wrongdoer did not allow to come to pass. The law does not ... require the plaintiff to show to a *certainty* that the patient would have lived had she been hospitalized and operated on promptly.

*Hicks*, 368 F.2d at 632 (citations omitted).

In nine of the cases allowing recovery there was a not-better-than-even chance of survival *and a lack of expert testimony* the defendant's negligence *probably* pre-

vented recovery. *See O'Brien*, 443 F.2d at 1018; *Jeanes*, 428 F.2d at 604–605; *Mays*, 608 F.Supp. at 1482; *James*, 483 F.Supp. at 585–87; *Thompson*, 688 P.2d at 616; *Sharp*, 710 P.2d at 1156; *Evers*, 471 A.2d at 408–09; *Kallenberg*, 357 N.Y.S.2d at 510–11; *Herskovits*, 664 P.2d at 479.

Three of those courts limited damages to the patient's lost chance of survival. *See O'Brien*, 443 F.2d at 1018–19; *Mays*, 608 F.Supp. at 1482–83; *James*, 483 F.Supp. at 587–88.

In contrast, two of those courts viewed the underlying injury, and not the lost chance of survival, as compensable. *See Thompson*, 688 P.2d at 615–16; *Kallenberg*, 357 N.Y.S.2d at 510–11. Under this reasoning, a patient could recover *all* damages resulting from an injury for which a defendant may only be partly responsible. It effectively allows a jury to speculate on causation because expert testimony that a physician's negligence *probably* caused the total damages is not required. This is an extreme position and clearly distorts the traditional principles of causation. *See* Comment, 27 Ariz.L.Rev. 257, 262–63 (1985).

■ We believe the better approach is to allow recovery, but *only* for the lost chance of survival. This approach is the most logical:

> To illustrate, consider the case in which a doctor negligently fails to diagnose a patient's cancerous condition until it has become inoperable. Assume further that even with a timely diagnosis the patient would have had only a 30% chance of recovering from the disease and surviving over the long term. There are two ways of handling such a case. Under the traditional approach, this loss of a not-better-than-even chance of recovering from the cancer would not be compensable because it did not appear more likely than not that the patient would have survived with proper care. Recoverable damages, if any, would depend on the extent to which it appeared that cancer killed the patient sooner than it would have with timely diagnosis and treat-

> ment, and on the extent to which the delay in diagnosis aggravated the patient's condition, such as by causing additional pain. A more rational approach, however, would allow recovery for the loss of the chance of cure even though the chance was not better than even. The probability of long-term survival would be reflected in the amount of damages awarded for the loss of the chance. While the plaintiff here could not prove by a preponderance of the evidence that he was denied a cure by the defendant's negligence, he could show by a preponderance that he was deprived of a 30% chance of a cure.

King, 90 Yale L.J., *supra*, at 1363–64.

Allowing recovery for the lost chance is also the most equitable approach because "[b]ut for the defendant's tortious conduct, it would not have been necessary to grapple with the imponderables of chance." *Id.* at 1378. Moreover, it offers "the most administrable and consistent method for dealing with many complicated cases." *Id.*

In comparison, the all-or-nothing approach to lost chance "subverts the deterence objectives of tort law by denying recovery for the effects of conduct that causes statistically demonstrable losses." *Id.* at 1377. By not recognizing the lost chance as a compensable interest, it "distorts the loss-assigning role" of tort law and "strikes at the integrity of the torts system of loss allocation." *Id.* Moreover, in an effort to mitigate its harsh application, this approach "creates pressure to manipulate and distort other rules affecting causation and damages." *Id.* Last, it places "a premium on each party's search for the willing witness." *Thompson*, 688 P.2d at 615.

We conclude the district court did not err in submitting the claim for lost chance of survival to the jury. Doctor Rosman testified that within a reasonable degree of medical certainty the plaintiff's chances for survival in September, 1981, were at least fifty and as high as eighty percent, while at trial they were zero. From this testimony, the jury could find that the defendant

*probably* caused a reduction in her chance of survival. The district court clearly limited damages to this reduction in its instructions. The jury was thus precluded from awarding *all* damages for the underlying injury: the preexisting cancer.

## II. *Instructions on proximate cause.*

■ The district court's instructions encompassed the plaintiff's theory of lost chance of survival and defined proximate cause.[3] The defendant argues the court erred in not including in its instructions that

one's negligent conduct is not a substantial factor in bringing about the harm to another if the harm would have been sustained, even if he had failed to exercise reasonable care.

*See* Restatement, *supra,* § 432(1), at 430. Without this language, he argues, the jury could find that he caused the plaintiff's imminent death.

Pertinent principles on jury instructions are summarized in *Estate of Smith v. Lerner,* 387 N.W.2d 576, 581 (Iowa 1986).

Read together, the instructions in this case clearly did not permit the jury to find that the defendant caused the plaintiff's imminent death. They only permitted the jury to award damages that resulted *from a reduction in her chance of survival.* Moreover, we agree with the plaintiffs that in light of the definition of proximate cause the requested language was superfluous. The definition set forth the substantial-factor and but-for tests, which were broad enough to include the theory of causation suggested by the defendant's requested instruction. *See generally* 1 *Iowa Uniform Jury Instructions* 2.6 (1984).

---

**3.** One who undertakes to render services to another which he should recognize as necessary for the protection of the other's person, is subject to liability to the other for depriving her of the opportunity to receive early treatment and the chance of realizing any resulting gain in her life expectancy and physical and mental comfort resulting from his failure to exercise reasonable care to perform his undertaking, if his failure to exercise such care increases the risk of such harm, and was a proximate cause of increasing such risk.

We conclude the district court did not err in its instructions.

## III. *Expert testimony.*

The defendant argues the district court abused its discretion in permitting Dr. Rosman to express opinions on the standard of care and chances for survival. Specifically, the defendant complains the court failed to consider Dr. Rosman's lack of specialization in family practice, experience, education, and familiarity with the practice of medicine in Iowa. *See* Iowa R.Evid. 702.

■ The admission of expert testimony rests in the discretion of the district court, and we will not reverse its decision "absent manifest abuse of that discretion." *Ganrud v. Smith,* 206 N.W.2d 311, 314 (Iowa 1973). "We are committed to a liberal rule on the admission of opinion testimony." *Id.* Moreover, the source of expert knowledge "is not significant, and knowledge from experience is every bit as good as that acquired academically." McCormick, *Opinion Evidence in Iowa,* 19 Drake L.Rev. 245, 263 (1970). A physician need not be a specialist in a particular field of medicine to give an expert opinion. *See Shover v. Iowa Lutheran Hospital,* 252 Iowa 706, 713, 107 N.W.2d 85, 89 (1961).

■ At the time of trial Dr. Rosman had been an osteopath in general family practice in Philadelphia for twenty-four years. He had examined thousands of women for breast cancer. He was familiar with the medical literature on breast cancer and survival statistics for that disease. He had served on a mortality review committee and taught at an osteopathic college. He was associated with graduates from the

An act or omission is a "proximate cause" when the actor's conduct is a substantial factor in bringing about the condition or injury sustained and when it appears that if it had not been for such act or omission the condition would not have been brought about or the injury sustained.

"Substantial" means that a party's conduct has such an effect in producing the harm as to lead a reasonable person to regard it as a cause.

college where the defendant obtained his degree. Although health problems had reduced his work load, he continued to examine patients. There was testimony the diagnosis of breast cancer does not vary from locale to locale.

In light of this evidence we do not believe the district court abused its discretion in permitting Dr. Rosman to testify.

## IV. *Lost consortium.*

■ The defendant contends a claim for lost consortium must be predicated on a personal injury to the spouse. Because of the nature of the underlying non-trauma injury of Elaine, he argues the district court erred in submitting the consortium claim of her husband Donald to the jury. *See* 1 *Iowa Uniform Jury Instructions* 3.17 (1984). The jury returned a verdict in favor of Donald.

This type of issue was raised by the husband in *Cole v. Taylor,* 301 N.W.2d 766, 768 (Iowa 1981), in which his wife sued her psychiatrist for failing to prevent her from committing murder. We did not directly address the issue, however, because we held that where the underlying action may not be maintained on grounds of public policy, a claim for lost consortium fails for the same reason.

Cases bearing on the issue of necessity of a physical injury to support a claim for lost spousal consortium are collected in the annotation at 16 A.L.R.4th 537, 538–43 (1982). We forego an extensive analysis of the various views on this question because, under the factual record and the instructions in this case, the jury could find pain, suffering, and disability on which a claim for lost consortium could be predicated. Accordingly, the court did not err in submitting Donald's claim for lost consortium to the jury.

## V. *Damages.*

The jury awarded $405,000 to the plaintiff.[4] The defendant contends this award was excessive and without evidentiary support on damages for disfigurement, past and future pain and suffering, medical expenses, significant shortening of her life, and death. An award that is flagrantly excessive or unsupported by the evidence may be set aside or altered on appeal. *Schmitt v. Jenkins Truck Lines, Inc.,* 170 N.W.2d 632, 659 (Iowa 1969).

Preliminarily, we note the district court did not instruct on damages for disfigurement, shortening of life, or death. Similarly, it advised the jury not to award reimbursed medical expenses as damages. *See* Iowa Code § 147.136 (1981).

Viewing the evidence in the light most favorable to the plaintiff, *Schmitt,* 170 N.W.2d at 660, we conclude the jury could reasonably find that she suffered a substantial reduction in her chance of survival due to the defendant's negligence. The jury's task was to value that reduction. It was limited under the instructions to award damages for past unreimbursed medical expenses, and past and future pain and suffering for the reduction.

The jury was instructed that past and future pain and suffering included not only physical pain but also mental anguish. *See Rice v. City of Council Bluffs,* 124 Iowa 639, 642, 100 N.W. 506, 507 (1904). We conclude there was ample evidence for these elements.

The plaintiff was told in July, 1982, the breast cancer had spread to her bones. She knew her cancer was incurable and her days were numbered. Since July, 1982, she faced the realization there was a *chance* that earlier diagnosis and treatment could have saved her life. *See Evers,* 471 A.2d at 411. No reasonable person could conclude from this evidence that her mental anguish

4. The jury calculated damages without fault in the sum of $450,000, but attributed ten-percent fault to her. Unreimbursed medical expenses amount to $1,064.75 of this sum. In his brief the defendant merely concludes, without argument, that the husband's award was excessive and unsupported by the evidence. Thus, we hold that he has waived error on this issue. *See* Iowa R.App.P. 14(*a*)3. In any event, we find it without merit for reasons similar to the ones set forth in this division.

will disappear. It is difficult to conjure up a case where the mental pain and suffering is any greater than in this one.

The defendant contends there was no evidence that to a reasonable degree of medical certainty the plaintiff would endure future pain and suffering. Expert testimony is often necessary to establish future physical pain and suffering. *Daniels v. Bloomquist*, 258 Iowa 301, 309, 138 N.W.2d 868, 873 (1965). However, "when pain is suffered right up to the time of trial and there is evidence plaintiff has not fully recovered, future pain and suffering may be submitted to the jury without medical testimony." *Mabrier v. A.M. Servicing Corp.*, 161 N.W.2d 180, 183 (Iowa 1968).

The jury could reasonably find from the evidence that the plaintiff will suffer physical pain and suffering. In addition to her testimony, Dr. Spratt stated there is a likelihood of considerable pain with the spread of breast cancer. She underwent radiation therapy and removal of her ovaries, and she testified about the physical pain she suffered from those treatments. She had been on anti-depressant medication. She awakened at night with severe headaches, and vomited most of the day. After her cancer spread, she experienced pain in her back and ribs. She was not able to take walks with her husband because the cancer had weakened her.

Finally, we give weight to the district court's refusal to grant a new trial based on the same grounds the defendant urges here. *See Schmitt*, 170 N.W.2d at 660. We conclude the award of damages was supported by the evidence and not excessive.

AFFIRMED.

All Justices concur except WOLLE, McGIVERIN and CARTER, JJ., who concur specially.

WOLLE, Justice (concurring specially).

I agree with the bottom line of the majority opinion but would affirm via a much less tortuous path. I have no quarrel with the majority opinion's disposition of most of the issues raised by defendant: Doctor Rosman was plainly qualified as a medical expert and provided admissible expert testimony; that expert testimony itself furnished the necessary factual support for the jury's finding of medical malpractice; and the damages recovered by the two plaintiffs were not excessive when we consider that the jury could reasonably have found the defendant's negligence will have cut short Elaine's life on earth and Donald's life with his wife. I also agree that Donald's claim for loss of consortium could properly be predicated on the injury Elaine has received—a shortened yet painridden life—which directly disrupts their married life together.

I take serious issue, however, with the unnecessary dictum in the majority's treatment of the issues of proximate cause and damages. We ought not in this case discuss or predict what we may someday decide on the question whether a patient may maintain an action for the loss of a not-better-than-even chance of survival. That question was not controverted at trial, it was not embraced within the issues submitted to the jury, and it therefore is not properly before us.

The jury instructions in this case presented remarkably plain and ordinary questions for the jury to resolve. This was a straightforward medical malpractice action; plaintiffs were required to prove that defendant was negligent, that the negligence was a proximate cause of damage, and that plaintiffs sustained measurable damages. Defendant did not object to the wording of those instructions. The jury's verdict was supported by substantial evidence. That should end our inquiry.

I. *Negligence.*

The most striking difference between this case and previous medical malpractice actions our court has addressed is that the trial court incorporated in its jury instructions the black-letter rule contained in section 323 of the Restatement (Second) of Torts (1965). Section 323 provides that a person who renders services to protect an-

other, for example the doctor treating a patient, is liable for physical harm resulting from failure to exercise reasonable care if the failure "increases the risk of such harm." Although the majority opinion quotes that Restatement section in its discussion of causation, section 323 is not a proximate cause principle but instead is a standard of conduct for reasonable persons. *See* Restatement (Second) Torts §§ 285–328 (explaining how standards of conduct are determined, then identifying and collecting those standards which define duties of reasonable persons). The trial court correctly included Restatement section 323 in its instructions governing primary negligence of the defendant.

Defendant's only objection to that jury instruction was that the court should also have included in its jury charge his proposed instruction derived from section 432(1) of the Restatement (Second) of Torts. The majority opinion correctly points out that there was no merit whatsoever to that objection. The two Restatement principles are not even closely related. Section 432(1) of the Restatement pertains not to primary negligence but instead to causation.

The jury's finding that defendant was negligent was based on correct instructions on the law and was supported by substantial evidence in the record. Doctor Rosman testified that defendant had failed to diagnose and treat the malignant tumor in Elaine DeBurkarte's breast with a reasonable degree of care and skill.

## II. *Proximate cause.*

On the critical issue of proximate cause, it is my view that the negligence theory of lost-chance need not be discussed and should certainly not be the theory on which this appeal is affirmed. The trial court's charge to the jury on causation included two Iowa uniform jury instructions on the subject, instruction 2.6 (proximate cause) and 2.7B (concurring proximate cause). Defendant did not object to those instructions.

Although defendant moved for a directed verdict contending no damages were proximately caused by his alleged negligence, there was no merit whatsoever in that motion. The testimony of Dr. Rosman, standing alone, generated a jury issue on proximate cause under traditional theories of legal causation set forth in the trial court's instructions to the jury. We must view that testimony in the light most favorable to the jury verdict. Iowa R.App.P. 14(f)(1). Doctor Rosman testified:

Q. Assuming, Dr. Rosman, that Mrs. DeBurkarte had proper diagnosis, assuming that she had a mass in August and that mass is the same mass that she followed in her breast for some months and which was eventually biopsied and removed in June of 1982, but assume that that mass had been removed in August or September of 1981, at the earliest time that she had detected, do you have an opinion based upon a reasonable degree of medical certainty as to what her chances would have been for survival at that time?

....

A. Yes, I do.

Q. And tell the Jury what the opinion is? ... A. My opinion, based on reasonable medical certainty, is that her chances would have been at least 50–50, and according to the literature, as I have said on stage one, her chances would be as high as 80 percent.

....

Q. What are her chances now? A. Zero.

From that testimony the jury could reasonably conclude that defendant's failure to detect and excise the malignant tumor probably shortened Elaine DeBurkarte's life and damaged her in a measurable way. *See Speed v. State*, 240 N.W.2d 901, 904, (Iowa 1976); *Bradshaw v. Iowa Methodist Hospital*, 251 Iowa 375, 384, 101 N.W.2d 167, 172 (1960). We must keep in mind our cardinal rule that questions of proximate cause are generally for the jury and may

be decided as matters of law only in exceptional cases. Iowa R.Civ.P. 14(f)(10).

Defendant's assignment of error on the issue of proximate cause is entirely without merit because the verdict was supported by substantial evidence and consistent with jury instructions which defendant did not protest.

### III. *Damages.*

The trial court relied heavily on Iowa uniform jury instructions in instructing the jury on the matters it could properly consider in determining what damages, if any, the plaintiff Elaine had sustained. *See* I Iowa Uniform Jury Instructions, Instruction Nos. 3.1, 3.9. The trial court submitted only three elements of damage for the jury's consideration: (1) past unreimbursed medical expenses; (2) future medical expenses; and (3) pain and suffering. The trial court's instruction concerning pain and suffering elaborated on that element as follows:

> The pain and suffering which the law allows is not confined to physical pain. It includes as well the mental anguish, the sense of loss and burden, the loss of enjoyment of life suffered by a person who is materially disabled.

Defendant did not specifically object to any of those damage elements. Defendant's challenge to the damages part of the jury charge was his general assertion that the evidence was insufficient to establish that any damages had been proximately caused by defendant's negligence. The only other record defendant made concerning submission of those damage elements was his motion for directed verdict, but that motion merely urged that no damages had been shown to have been proximately caused by defendant's negligence, and it did not distinguish between the three separate elements submitted to the jury. The general objection to the damage instruction and the motion for directed verdict thus focused on the question of causation, not any particular damage element. The motion and objection were without merit because they ignored the testimony of Dr. Rosman which itself generated a jury issue under traditional theories of legal causation as to all three of those damage elements.

The suggestion of a "lost chance" theory crept into this case primarily by reason of the wording of item B in the trial court's marshaling instruction. The material portion of that instruction was as follows:

> To entitle the Plaintiffs to recover, the burden is upon them to establish by a preponderance of the evidence all of the following propositions:
>
> A. That the defendant was negligent in some particular as charged by the Plaintiffs.
>
> B. That such negligence was a proximate cause depriving Elaine DeBurkarte of the opportunity to receive early treatment and a chance at realizing any resulting gain in her life expectancy and physical and mental comfort.
>
> C. That the Plaintiffs have sustained damage and the extent thereof.

When the instructions are considered as a whole, however, it is clear that item B has significance only to the extent that it reinforced the standard proximate cause instructions which the trial court included in its charge to the jury. Item B did not direct nor suggest to the jury that it was to place a percentage on any so-called lost chance or lost opportunity for treatment. Item B merely required plaintiff Elaine DeBurkarte to establish that defendant's negligence "was a proximate cause depriving" (which is to say probably deprived) her of early treatment and the "gain in her life expectancy and physical and mental comfort" that such treatment would have produced. She therefore had to prove that she probably lost that "chance" (the chance being that favorable happening that did not occur). The charge to the jury in this case, including the marshaling instruction, did not allow the plaintiff to recover on a lesser showing—for example, that there was one chance in four that she had lost the chance to survive the cancer for an additional ten years. The issue of lost chance addressed in the majority opinion's discus-

sion of proximate cause was really never in this case.

Defendant's contention that the awards of damages to both plaintiffs were excessive gives us pause. But these were certainly major injuries. Dr. Rosman's testimony would support a finding that defendant's negligence probably deprived her of treatment that would have extended her life by ten years. The effect of that loss would be devastating to Elaine and her husband. It was clearly for the jury to decide under these unchallenged instructions what damage amount would fairly compensate Elaine for the resulting pain, disability, and mental anguish, and what amount Donald should receive for loss of consortium. We emphasize, as does the majority opinion, that defendant did not protest evidence that plaintiff Elaine De-Burkarte had sustained mental anguish, and the instruction on pain and suffering contained that element of damages and the element of "future disability" without objection from defendant. This record gives us no basis for overturning the jury's determination of the amount each plaintiff should receive as fair compensation for those damages.

In short, I would affirm the judgment of the trial court by applying well-established principles of law, such as those by which the trial court instructed this jury. I am troubled that the majority opinion gropes with unsettled and unsettling theories of tort recovery which we have not previously adopted and need not here address.

McGIVERIN and CARTER, JJ., join this special concurrence.