**Rick TIMM and Beverly Timm, Individually, and Rick Timm and Beverly Timm d/b/a Timm'S Auto Body, Appellees,**

v.

**Larry CLEMENT and Clement Auto & Truck, Inc., Appellants.**

No. 96–1221.

Court of Appeals of Iowa.

Dec. 29, 1997.

---

Robert P. Malloy and Lynn A. Collins of the Malloy Law Firm, Goldfield, for appellants.

Brenda Myers of Barnhill & Goodman, P.C., West Des Moines, for appellees.

Heard by CADY, C.J., and HUITINK and STREIT, JJ., but decided by HUITINK, P.J., and STREIT and MAHAN, JJ.

STREIT, Judge.

Defendant Clement sold the plaintiffs, Timms, property contaminated with petroleum products and which was near underground storage tanks. Clement did not disclose the contamination or the underground storage tanks to Timms before purchase. After discovering the contamination and underground storage tanks, Timms sued. The jury found Clement negligent and in breach of the contract and awarded $50,000 damages. Clement appeals arguing he was entitled to a directed verdict on the breach of contract and negligence claims and the damage verdict was excessive. Because the evidence was sufficient to engender a jury question on these issues and substantial evidence supports the verdict, we affirm.

## I. Background & Facts.

In 1987, Larry Clement, owner of Clement Auto & Truck, Inc., purchased property from Clovis L. Christeson. At the time, Christeson told Clement there was one underground storage tank on the property. In 1990 Clement sold part of the property to Timms for their business, Timm's Auto Body. At closing, Clement signed a groundwater hazard statement stating there were no underground storage tanks or hazardous waste on the property sold to Timms.

In 1992, both Clement and Timms were notified by the Iowa Department of Natural Resources (DNR) the underground storage tank must be removed from the property. There was a dispute as to whether the tank was actually located on the Timms' or Clement's property. When the tank was removed in April 1992, another underground storage tank was discovered on the property. The second tank was also removed. Soil tested on Clement's and Timms' property had petroleum contamination.

The Timms filed a petition against Clement Auto & Truck and Larry Clement for damages because of the presence of the underground storage tanks and resulting contamination. The court granted defendant's motion for directed verdict on all counts except the negligence, breach of contract, and negligent misrepresentation. The jury found Clement was negligent and had breached the contract. It awarded $50,000 in damages. Clement appeals.

## II. Scope of Review on Denial of Motion for Directed Verdict.

Clement argues the trial court erred when it denied his motion for directed verdict on Timms' negligence and breach of contract

claims and submitted these claims to the jury.

Denial by the trial court of a motion for directed verdict is reviewed for correction of errors of law. *Spaur v. Owens–Corning Fiberglas Corp.*, 510 N.W.2d 854, 858 (Iowa 1994). The evidence is viewed in the light most favorable to the nonmovant and it is determined whether sufficient evidence existed to warrant submission of the issues to a jury. *Smith v. Smithway Motor Xpress, Inc.*, 464 N.W.2d 682, 684 (Iowa 1990). To grant a directed verdict, a trial court must find the evidence, when considered in the light most favorable to the opposing party, is insufficient as a matter of law to sustain the allegations brought. *Nash v. Schultz*, 417 N.W.2d 241, 243 (Iowa App.1987). The trial court is vested with considerable discretion in determining whether evidence is sufficient to submit the issue to the jury. *Oberreuter v. Orion Industries, Inc.*, 398 N.W.2d 206, 209 (Iowa App.1986).

We also consider whether reasonable minds could differ on the issues in controversy. *Spaur*, 510 N.W.2d at 858. If they could, the issue should be submitted to the jury. *Schiltz v. Cullen–Schiltz & Assoc., Inc.*, 228 N.W.2d 10, 17 (Iowa 1975). Generally questions of negligence and proximate cause are for a jury; it is only in exceptional cases they may be decided as matters of law. *Barnes v. Bovenmyer*, 255 Iowa 220, 223, 122 N.W.2d 312, 314 (1963). To successfully resist a motion for directed verdict the plaintiffs must show merely there is evidence sufficient to submit the question to the jury; they do not need to prove their claims. *Miller v. Young*, 168 N.W.2d 45, 51 (Iowa 1969).

### III. Submission of Negligence Claim to Jury.

Timms asserted Clement was negligent in not registering the property according to regulations, maintenance, removal, use, and closure of underground storage tanks. To establish negligence, the plaintiffs had to prove Clement owed them a duty, he breached the duty, the breach was the proximate cause of damage to the plaintiffs, and

that actual damage occurred. *See Rinkleff v. Knox*, 375 N.W.2d 262, 266 (Iowa 1985). Timms contend Clement had a duty to disclose any conditions affecting their property and a duty to close the tanks and test for contamination after buying the property from Christeson. They argue the damage they sustained was proximately caused by Clement breaching these duties. Timms cite *Strawn v. Canuso*, 140 N.J. 43, 657 A.2d 420, 431 (1995), decided by the Supreme Court of New Jersey in support of their position Clement owed them a duty to disclose off-site conditions which affect the desirability and market value of their property.

Clement argues he owed no duty to Timms and was not the proximate cause of damage to Timms because he did not actively contribute to the contamination of the soil. The *Strawn* court reasoned a seller of residential housing had a duty to disclose known off-site conditions,[1] unknown to the buyers, that were reasonably foreseeable to materially affect the value or desirability of the property to be sold. Clement argues the reasoning of *Strawn* does not apply to this case where the property is used for business rather than residential purposes.

The facts of this case place an even more obvious duty on Clement than the seller in *Strawn* to disclose off-site conditions. Here, the off-site conditions were on property owned by Clement. The property abutted the property he sold to Timms. The defect was a latent one that Timms had no way of detecting unless disclosed to them by Clement. This is not like *Strawn* where the off-site conditions existed on property owned by a party outside the contract. In addition, the off-site conditions in *Strawn* would have been visible to the sellers.

It is a long-established rule of law that one who sells real estate knowing of a soil defect, patent to him, latent to the purchaser, is required to disclose such defect. It is evident such defect is material to the sale and will substantially affect the use of the land. *Loghry v. Capel*, 132 N.W.2d 417, 419, 257 Iowa 285, (Iowa 1965). Although we

---

1. The off-site condition at issue in *Strawn* was a landfill. There was a question whether the presence of the landfill was readily observable by the plaintiffs.

do not go as far to impose a duty when the off-site conditions are visible and owned by a party outside the contract, we do impose a duty on a seller to disclose latent defects located on property owned by the seller, but off-site the property to be sold. *See Urman v. South Boston Sav. Bank*, 424 Mass. 165, 674 N.E.2d 1078, 1082 (1997) ("In appropriate circumstances, off-site physical conditions known to the seller … may require disclosure if the conditions are 'unknown and not readily observable by the buyer….' ")[2] This duty exists only when the off-site latent defect may materially affect the desirability or market value of the property to be sold. *Id.* If these conditions exist and the seller does not disclose the conditions, a duty has been breached. Recognition of this duty is in line with the tenets of tort law that a person owes a duty to another only when his actions or failure to act will foreseeably cause injury to the other. *See Naxera v. Wathan*, 159 N.W.2d 513, 521 (Iowa 1968).

■ In considering whether Clement owed a duty to Timms we also consider Clement's violation of the rules and regulations of the Department of Natural Resources. A duty may be created by statutory enactment. In some cases the Iowa Supreme Court has held that violation of a statute is negligence per se. *See, e.g., Wiersgalla v. Garrett*, 486 N.W.2d 290, 292 (Iowa 1992). For violation of a statute to be negligence per se the victim must be within the class of persons the statute was intended to protect and the harm suffered the type the legislature was trying to prevent. *Wilson v. Nepstad*, 282 N.W.2d 664 (Iowa 1979).

■ The DNR rules in effect at the time Clement purchased the property required owners of underground storage tanks to permanently close the tanks that have been out of use for more than twelve months. The owners must then clean out the tank and assess the site with soil and groundwater samples. Iowa Admin. Code r. 567–135.8(2)–(3). By not doing these things,

Clement violated DNR rules and regulations. The legislature sought to prevent harm to the people and land that came into contact with contaminants. The laws are intended to minimize the risks of contamination to human health, safety, and the environment. The Timms were within the group of people the statute meant to protect. If they suffered the type of harm the statute meant to protect against was a question for the jury.

■ Clement argues, even if negligence on his part can be proved, the negligence was not the proximate cause of the damage. The injury to Timms is caused in large part by the contamination of their soil. The contamination occurred between 1985 and 1990. It is possible, had Clement fulfilled his common law and statutory duties, the contamination and the damage would not have occurred. It was not error for the trial court to submit the Timms' claim of negligence to the jury.

### IV. Submission of Breach of Contract Claim to Jury.

The trial court submitted Timms' breach of contract claim to the jury. Clement argues it was error to submit the claim to the jury because he did not breach the contract as a matter of law and was entitled to a directed verdict.

Part of the sales contract between Timms and Clement was a groundwater hazard statement which stated "There is no known hazardous waste on this property …. [and][t]here are no known underground storage tanks on this property." The statement was signed by Larry Clement. Rick Timm testified he relied on this statement and would not have purchased the property had the statement revealed the presence of hazardous waste or underground storage tanks.

■ Clement argues the representations he made in the groundwater hazard statement are true because the underground storage tanks are not on Timms' property, but next to it, and the petroleum contamination

---

2. In *Urman* the Massachusetts Supreme Court refused to impose a duty on a vendor of condominium unit for failing to disclose to purchasers a neighborhood school had closed because of a toxic waste contamination problem. *Urman*, 424

Mass. 165, 674 N.E.2d 1078, 1081. In contrast with this case, the off-site condition in *Urman* no longer existed. *Id.* at 1082. Further, the bank had only limited knowledge of the waste contamination problem. *Id.*

present in the Timms' soil is not "hazardous waste" as defined by Iowa and federal law.

If this argument was without doubt, Clement's motion for directed verdict on the Timms' breach of contract claim should have been granted. However, the location of the underground storage tanks was never established as matter of law. It is possible the underground storage tanks are on or partially on Timms' property. Clement testified the waste oil tank was probably on or partially on the Timms' property.

 Clement is correct in his assertion that the petroleum contamination on the Timms' property would not be considered "hazardous waste" subject to federal hazardous waste regulations. 40 C.F.R. 261. Petroleum contaminated media subject to federal corrective action requirements under the underground storage tanks regulations are not subject to hazardous waste regulations. *Id.* This does not mean, however, petroleum contaminated media is not hazardous waste for the meaning of Timms' and Clement's contract. It simply means there is a separate set of rules and regulations to deal with petroleum contamination under federal law.

Clement argues petroleum products are not "hazardous waste" for the purposes of the Timms' and Clement's contract because they are not defined as hazardous waste under the Iowa Administrative Code. We do not agree that petroleum contamination is not hazardous waste for the purposes of the contract. Using semantics to argue petroleum contamination is not a hazardous waste does not work in this instance. Although the code does not specifically define petroleum contamination as "hazardous waste" it does include petroleum products in the definition of a "hazardous substance." [3] Because it can not be held as a matter of law that there were not underground storage tanks on the Timms' property or petroleum contamination

is not "hazardous waste," the court did not err in submitting the breach of contract issue to the jury.

## V. Jury's Verdict.

 Clement complains the jury awarded an excessive damage verdict. When reviewing verdicts for excessive damages, the evidence is viewed in a light most favorable to the plaintiff. *Olson v. Prosoco, Inc.*, 522 N.W.2d 284, 292 (Iowa 1994). The jury's verdict is not disturbed unless it is "flagrantly excessive or inadequate, so out of reason so as to shock the conscience, the result of passion or prejudice, or lacking in evidentiary support." *Id.* (quoting *Harsha v. State Sav. Bank*, 346 N.W.2d 791, 799 (Iowa 1984)). These factors are not present in this case.

Timms were damaged by the contamination of their property. The diminution in the market value of the property is between $95,000 and $113,000. The property could not be sold to anyone who requires a mortgage or bank financing. If Timms seek to clean up their property the cost of the clean up would be approximately $230,000. The property has been stigmatized even after the property is remediated. In its contaminated condition, the property cannot be used as collateral. Timms' bank will not refinance their loan on the property because of the contamination. The jury's award is supported by substantial evidence and will not be disturbed.

**AFFIRMED.**

CADY, C.J., takes no part.

---

**3.** "Hazardous substance" means any substance or mixture of substances that presents a danger to the public health or safety and includes, but is not limited to, a substance that is toxic, corrosive, or flammable, or that is an irritant or that, in confinement, generates pressure through decomposition, heat, or other means. The following are examples of substances which, in sufficient quantity, may be hazardous: acids; alkalis; explosives; fertilizers; heavy metals such as chromium, arsenic, mercury, lead and cadmium; industrial chemicals; paint thinners; paints; pesticides; petroleum products; poisons; radioactive materials; sludges; and organic solvents. Iowa Admin. Code r. 567–131.1 (1994).